## SUN INSURANCE COMPANY *v.* JONES.

Decided April 4, 1891.

1. *Insurance—Iron-Safe Clause – Keeping Books.*

A policy contained a covenant that the assured, a merchant, should keep a set of books showing all business transacted, and keep them locked in a fire-proof safe at night and at all times when the store was not actually open for business; the books to be produced in case of loss, and, on failure to produce them, the policy to be null and void. The evidence showed a custom among merchants of the locality to continue the business of the day until 10 or 11 o'clock at night; that the front door was kept locked at night, but customers were admitted upon knocking at the door; that, about 9 p. m., while assured's bookkeeper, engaged in writing up the books, had left the store for a few minutes, intending to return and complete the work, the fire occurred and the books were destroyed. *Held:* That the parties are presumed to have contracted with reference to the necessities of the business and the usages which prevail in its management, and that the store was " actually open for business," within the meaning of the policy.

2. *Fire Insurance—Limitation—Date of Loss.*

When a policy of insurance provides that a loss shall be payable sixty days after proof thereof, and that " all claims under this policy are barred, unless presented within one year from the date of loss," the limitation begins to run from the time the loss becomes payable, and not from the date of the fire.

APPEAL from *Pulaski* Circuit Court.

JOSEPH W. MARTIN, Judge.

S. M. Jones & Co. sued the Sun Mutual Insurance Co. in the Pulaski circuit court on a policy of insurance for $2000, on a house and stock of goods which had been destroyed by fire at Riverside, Arkansas.

Defendant answered, alleging that, by the terms of the policy of insurance, it was stipulated as follows:

"The assured under this policy hereby covenants and agrees to keep a set of books, showing a complete record of all business transacted, including all purchases and sales, both for cash and credit, together with the last inventory of said business; and further covenants and agrees to keep such books and inventory securely locked in a fire-proof

safe at night, and at all times when the store mentioned in the within policy is not *actually open for business,* or in some secure place not exposed to a fire, which would destroy the house where such business is carried on ; and in case of loss the assured agrees and covenants to produce such books and inventory, and in the event of the failure to produce the same, this policy shall be deemed null and void, and no suit or action at law shall be maintained thereon for any such loss."

That the plaintiffs failed to keep a set of books showing a complete record of all transactions and a last inventory, and failed to keep said books and inventory securely locked in a fire-proof safe at night, and at all times when their store was not actually open for business, or in a secure place not exposed to fire which would destroy their business house ; but they left their books out of the safe at night when no business was being carried on, so that they were destroyed by the fire which consumed the building, and were not produced in accordance with the terms of the said policy.

The defendant also pleaded that, by the terms of the policy, it was provided that no suit should be maintained thereon unless brought within one year after the loss, and that this suit was not brought until the lapse of more than one year.

The case was tried by the court sitting as a jury, and the following findings of fact were made :

" The store house and stock at the time of destruction by fire was covered by insurance in this company for $750 on house and $1250 on merchandise ; other insurance on stock, $1000 in New Orleans Insurance Association, and $3000 in Southern Insurance Company. Value of house, $1200 ; value of stock, $9500.

" The house and stock were destroyed by fire on the 9th day of December, 1887, at about 9:30 o'clock p. m.; that plaintiffs had a fire-proof safe in their store-house in which their mercantile books, such as are ordinarily kept by mer-

chants, were kept when not in use. It was the plaintiff's custom to take the books out in the morning and lay them on the desk for use during business hours; they were kept out until the business of the day was closed and the books were posted and written up, when they were put in the safe and locked up; that it was the custom to write up the books in the evening, after the rush of business was over; the store was kept open for customers and business transacted frequently as late as 10 or 11 o'clock p. m., and their habit was to admit customers as late as those hours, though after night the front door was locked to prevent intrusion of improper characters, but the doors were sash doors with glass in them so that customers could see that the house was open for business, and on knocking they would be admitted; that on the evening of the fire the house was being kept open in this customary manner, and a light in the office and the rear part of the store to advise customers that they could so enter. This was the customary mode of carrying on mercantile business in that section of the country. The clerk was in the office writing up the day's business, as usual, with the books on the desk, the business of the day not being yet closed, the posting of the books not finished, when, upon invitation of a friend, he stepped out the side window across to his friend's in a store next door, to eat a plate of oysters, intending to return in a short time and close up the books and put them away in the safe, as usual, and while so engaged, the fire broke out. At the time of the fire, B. M. Jones, one of the plaintiffs, who occupied, with his family, rooms at the end of the store-house, connecting with it in the rear, was waiting, as was his usual custom, to put the books away and lock the safe after the clerk should have finished posting up the books, as was their usual custom. There was money in the safe, and Mr. Jones carried the key, and it was the usual habit for the clerk to get through posting up at night and then go back and have Mr. Jones come in, put the books away and lock up the safe for the night. The proof of loss was duly made Feb-

ruary 1st, 1888 ; this suit was commenced on the 10th day of January, 1889."

The defendant asked the court to declare the law to be that the plaintiffs were debarred from recovering by reason of their failure to keep their books in an iron safe at night and at all times when their store was not actually open for business, and that the suit was barred because not brought within one year next after the date of the fire; but the court refused both declarations, and to its action in so doing the defendant excepted at the time.

From a judgment in favor of the plaintiffs defendant has appealed.

*U. M. & G. B. Rose* and *E. W. Kimball* for appellant.

1. The iron-safe clause has been frequently passed upon and sustained. 5 S. E. Rep., 125 ; 18 Ins. Law Jour., 813 ; 13 S. W. Rep., 799; *ib.,* 1103. This clause required the books kept in a fire-proof safe *at night* and when the store was not *actually open* for business. The proof shows that the fire occurred at night, and that the books were not locked in the safe, and that the store was not actually open.

2. The suit not having been brought within one year after the loss, it was barred. The "loss" is the. fire, and not the "proof of loss." 7 Gray, 61 ; 7 Wall., 386; 26 La. An., 298 ; 16 U. C. Q. B., 135 ; 83 Va., 741 ; 91 Ill., 92 ; 51 Conn., 17 ; 1 Bradw. (Ill.), 309 ; 66 Mo., 32 ; 1 Ohio Ct. Ct., 192 ; Berryman's Ins. Dig., 792 ; 21 New B., 544; 20 Bradw., 431 ; 12 Ont. App., 418, cited Ber. Ins. Dig., 794.

*J. M. Moore* for appellees.

1. The-iron safe clause is to be construed with reference to the well known and long established commercial usages of the country. The store was open for business until the business of the day was closed, which was often as late as 10 or 11 o'clock at night. "At night" means during the night when the store was closed and business suspended. For cases where similar clauses have been reasonably construed, see 38 Fed. Rep., 19, and cases cited ; 8 Cush., 79 ;

8 Metc. (Mass.), 124; *ib.*, 125; 12 Wall., 404; 27 Cent. Law Jour., 284; 6 A. & E., 170; *id.*, 75; 2 C. M. & R., 447; 17 N. E. Rep., 771, 776; 31 Me., 221–4–5; 1 Wood, Fire Insurance, 145.

2. The limitation did not begin to run until the right of action accrued, which, under the provisions of the policy, was sixty days after proof and adjustment of the loss.   2 Wood on Fire Ins., p. 1029; May on Ins., sec. 470; Flanders on F. Ins., p. 580; Bacon on Ben. Soc., sec. 446; 9 Ins. L. J., 113; 39 N. Y., 45; *ib.*, 315; 28 Wisc., 472; 16 W. Va., 658; 33 *id.*, 409; 62 Ia.; 12 Ia., 384; 19 *id.*, 364; 44 Mich., 420; 45 N. W., 285; 17 Fed. Rep., 568; 25 *id.*, 296; 30 *id.*, 668; 83 Cal., 473; 53 Ark., 300; Berryman's Ins. Dig., 782.   The policy is construed most strongly against the insurer.   9 Ky. Law. Rep., 147; Ber. Ins. Dig., 783, and cases *supra*.

**1. Insurance— Keeping books.**        MANSFIELD, J.   The only contention made by counsel for the appellant on the first ground of defense is that the store was not "actually open for business" at the time of the fire. And it is argued that the book-keeper, who was last in charge of the store on the night it was burned, had left it locked and unoccupied, and it could not therefore have been at any later time open for business.   But the facts as found by the court are, that the book-keeper, who was also a salesman, was engaged in writing up the record of the day's business, a duty which the policy itself enjoined, when, passing out of the building by a window, he went into an adjoining store, expecting to return in a short time and complete his work.   He had been absent only a few moments when the fire broke out; and there was nothing in the manner or occasion of his leaving the store to indicate that anything was intended beyond a brief intermission in his labor. No importance is to be given to the fact that the door was locked.   The evidence explains that it was the custom to keep it locked after night to prevent the intrusion of persons whose presence was not desirable.   The building having

sash doors, customers could see from its being lighted that the store was open for business, and on knocking at the door they were admitted.   This was the usual method of keeping the store "open" at night.   Nor can the lateness of the hour aid the theory of the defense, for it is shown that it was the custom of merchants in that section of the country to continue the business of the day until 10 or 11 o'clock at night ; and that it was necessary to enter the transactions of each day in the books before they were locked up for the night.   The policy in effect recites the fact that the plaintiffs kept a country store, and the parties are presumed to have contracted with reference to the necessities of such a business and the usages which prevail in its management. *Jones* v. *Southern Ins. Co.*, 38 Fed. Rep., 19.   It is not contended that the store had been actually closed for the day before the book-keeper left it.   And we think that, if it was then open within the meaning of the policy, there is no avoiding the conclusion that it would remain so until the transactions of the day were recorded in the books, or until some act had been done indicating a purpose to close it.   In the case cited above the precise question now being considered arose and upon the same facts, the plaintiffs and the property insured in that case being the same as in this.   And the court there held that the store was "actually open for business" within the meaning of the iron-safe clause, when the fire broke out.   The reasoning by which that ruling is supported appears to us conclusive.   We therefore hold that the finding of the court below on the issue formed by the first defense is sustained by the evidence, and that it was not error to refuse the first declaration of law requested by the defendant. *Houghton* v. *Ins. Co.*, 8 Metcalf, 114 ; *Daniels* v. *H. R. Ins. Co.*, 12 Cushing, 416 ; *Turley* v. *N. A. Ins. Co.*, 25 Wendell, 374.

2.   The second defense is that the plaintiff's action was not brought within one year after the date of the fire.   It was commenced within one year after proof of the loss was made, and the remaining question to be decided is, whether

2.  Limitation
—Date of loss.

the time within which the policy required the plaintiffs to sue should be computed from the day on which the fire occurred, or from that on which the loss it occasioned became due and payable.

The 18th clause of the policy fixing the period of limitation is as follows: "All claims under this policy are barred, unless prosecuted within one year from the date of loss." By another clause it was provided that payment of the loss insured against should "be made in sixty days after the loss shall have been ascertained and proved." If the term "loss," in the eighteenth clause is to be taken to mean the destruction of the property, then it evidently does not mean what the same word implies in the provision fixing the time of payment; for in the latter, the "loss" is described as something to be ascertained—to be proved and paid— words which apply more appropriately to the amount of damages which the assured has sustained by the fire than to the fire itself. The loss to be ascertained and proved is also that contemplated by the eighth, tenth and twelfth conditions or clauses of the policy. By the tenth clause the loss on goods and merchandise is to be paid for at a value "to be ascertained by experts mutually appointed." Again in another clause it is stipulated that the company shall be liable only for three-fourths of the loss not exceeding the sum insured, "the other one-fourth to be borne by the assured." Here also the term "loss" is plainly used in the sense of pecuniary damages. Now, the limitation clause declares that all claims shall be barred "unless prosecuted within one year from the date of loss." Standing alone this provision would seem to give the full period of one year in which claims may be prosecuted. But the clause is wholly ineffectual to accomplish that object, if the appellant's construction be adopted, since no cause of action accrues in any case until the expiration of sixty days, and the time of payment may be further deferred by delays which may occur beyond the control of the assured, by an exercise of the right reserved to the company to have the

loss ascertained and adjusted by experts. It is at least a possible thing that the whole period of limitation might thus elapse before the right to sue would accrue. In that event the assured would, without fault on his part, be cut off from any remedy whatever. A construction of the contract which would permit such a result cannot, it is needless to say, be entertained. *Barber* v. *Fire and Marine Insurance Co.,* 16 W. Va., 658.

This brief comparison of the several clauses of the policy is sufficient to show that the meaning of the limitation clause is not free from doubt. And in such case a familiar rule is applicable which requires us to construe it most strongly against the company. 2 Wharton, Cont., 670; May on Ins., secs. 175–179.

As to the construction to be given the limitation clause of a policy, where it is drafted in language similar to that presented by this instrument, the adjudicated cases are not in harmony, but the weight of authority which they furnish is, we think, to the effect that the period of limitation begins to run from the day on which a cause of action accrues to the assured. *Levy* v. *Va. Ins. Co.,* 9 Insurance Law Journal, 113; *Hay* v. *Star Fire Ins. Co.,* 77 N. Y., 242; *Steen* v. *Niagara Fire Ins. Co.,* 89 N. Y., 315; *Mayor* v. *Hamilton Fire Ins. Co.,* 39 N. Y., 45; *Ellis* v. *Council Bluffs Ins. Co.,* 64 Ia., 507; *Spare* v. *Home Mutual Ins. Co.,* 17 Fed. Rep., 568; *Vette* v. *Clinton Fire Ins. Co.,* 30 Fed. Rep., 668.

The text writers, so far as we have had access to their works, also state the rule to be that the limitation will be construed to run from the time when the loss becomes payable, and not from the date of the fire. 2 Wood on Insurance, p. 1029; May on Insurance, sec. 479; Bacon on Benefit Societies, sec. 446.

The plaintiff's action was not barred, and the judgment is affirmed.