SOUTHERN INSURANCE COMPANY *v.* PARKER.

Opinion delivered October 19, 1895.

FIRE INSURANCE—IRON-SAFE CLAUSE.—Where the assured in a policy insuring a saloon business against fire agrees to keep his books in a fireproof safe at night, and at all times when the saloon is not open for business, or to keep them in some secure place not exposed to a fire which would ·destroy the house, he cannot recover on the policy for a loss incurred if the books were destroyed at night while kept under a counter in the saloon, instead of in the safe, although the saloon was kept open day and night, and assured kept a record of his hotel business in the same books, making it inconvenient to open the safe if a guest wished to pay his bill at night.

Appeal from Jefferson Circuit Court.

JOHN M. ELLIOTT, Judge.

STATEMENT BY THE COURT.

This is an action at law upon a policy of insurance upon certain personal property against loss by fire. The portions of such policy material for us to consider are as follows: "The Southern Insurance Company of New Orleans, in consideration of the stipulations herein named, and of fifty dollars premium, does insure J. M. Parker for the term of one year from the 4th of January, 1892, to the 4th of January, 1893, against all direct loss or damage by fire, except as hereinafter provided, to an amount not exceeding two thousand dollars, to the following described property, while located as described

herein, to-wit: One thousand dollars on his stock of wines, liquors, tobaccos, etc.; one thousand dollars on his bar furniture and fixtures, glassware in chests, tables, chairs and carpets. * * * * * * This insurance is subject to the condition of the iron safe and three-fourth value clause as per printed form attached to and made part of this policy." The iron safe clause referred to is as follows: "The assured under this policy hereby covenants and warrants to keep a set of books showing a complete record of business transacted, including all purchases and sales (cash sales need not be itemized except by daily totals), together with the last inventory of said business; and further consents and agrees to keep such books and inventory securely locked in a fireproof safe at night, and at all times when the store mentioned in the within policy is not actually open for business, or in some secure place not exposed to a fire which would destroy the house where said business is carried on; and, in case of loss, whether the store be open for business or not, the assured warrants and covenants to produce such books and inventory, and in the event of a failure to produce the same, this policy shall be deemed null and void, and no suit or action at law shall be maintained thereon for any such loss."

The answer of the defendant admitted the execution of the policy, and the loss of the property by fire, but it denied that the plaintiff had duly fulfilled the conditions of said policy, and specially pleaded a failure to comply with the conditions above set out, and alleged that, by reason of such failure, the policy was void. It also denied that the plaintiff was the sole and unconditional owner of the property, alleged that it was encumbered by mortgage, contrary to the conditions of the policy, and that the same was void for that reason also.

On the trial of the case the appellee, Parker, and his bookkeeper, testified, in substance, that appellee was engaged in the hotel business, and "ran" a saloon in connection therewith. That the property insured was the stock of wines, liquors, etc., kept in the saloon, and also the furniture and fixtures therein. That a complete set of books were kept, as required by the policy, but that the accounts of the hotel and saloon were kept in the same books. The hotel was kept open night and day, and the saloon also kept open all the time except on Sundays. The books were not kept in a safe, but under the counter. They were not placed in the safe oftener than about once a month.

The books were posted each night by the bookkeeper, and were then left underneath the counter. The reason given for not placing them in the safe was that they were needed that customers might settle their accounts. The hotel, saloon, furniture and stock of wines and liquors were destroyed by fire on the 16th of August, 1892, about 11 o'clock at night. On the night of the fire the bookkeeper had posted the books and gone to bed, leaving the books as usual under the counter. A night clerk was left in charge of the hotel and saloon. In the confusion caused by the fire, and because his first duty was to arouse the sleeping inmates of the hotel, he overlooked the books, and they were destroyed by the fire that burned the hotel.

There was a verdict and judgment in favor of plaintiff. A motion for new trial being overruled, an appeal was taken.

*Austin & Taylor*, for appellant.

1. The "iron safe" clause was binding on appellee as a condition precedent. 41 U. S. 510; 18 S. E. 194. It was an express promissory warranty, and a strict compliance was necessary. 58 Ark. 565; 1 Wood, Ins.

secs. 179, 436; 2 *id*. 156, 167; Angell on Ins. 144; 1 Arnold, Ins. 213; 58 Ark. 277; 13 Conn. 533. The clause in this case differs from that in 54 Ark. 376. Inability or impossibility to comply with the clause offers no excuse, unless the insurers are in some way responsible for the omission. Richard on Ins. sec. 54; 52 N. W. 649; 6 Term Rep. 710; 2 Pet. 25; 13 N. J. Law, 119; 13 Me. 265; 112 Mass. 49. This is the rule, except a suggestion in 5 Sneed, 139 and a dictum 109 Pa. St. 535, repeated in 138 Pa. St. 838. For the general rule, see 2 May, Ins. 466; 2 Phill. Ins. 472; Wood, Fire Ins. 710; 48 Iowa, 644; 21 Mo. 81; 87 N. Y. 626; 50 Conn. 55. The custom of hotel keepers cannot be pleaded, for the custom was well known and expressly stipulated against. Greenl. Ev. 295; 54 Ark. 223; 68 Am. Dec. 145; 36 *id*. 242; 39 *id*. 611; 50 Mich. 434; 77 U. S. 383.

2. Appellee was bound by the stipulation that he was the sole and unconditional owner of the property, and the agreement with Miller was a chattel mortgage, and avoided the policy. 33 Ark. 387; May, Ins. sec. 291*a*; 122 Pa. St. 128; 61 Iowa, 577; 30 Pa. St. 311; 12 Vt. 366; 3 Seld. 370; 6 Vroom, 366; 60 Am. Rep. 780; 13 Conn. 533; 88 Mich. 94; 71 Iowa, 119; 40 Md. 620; 5 *id*. 165; 48 Wis. 26; 25 Barb. 497; 47 Md. 403. This was an affirmative warranty as to ownership and incumbrance, and cannot be changed without an express waiver. 32 L. R. A. 325; 58 Fed. 723; 47 N. Y. 114; 13 Mass. 96; 6 Vroom, 366; 10 Fed. 232; 120 U. S. 189; 57 N. W. 833; 98 Mich. 621; 89 U. S. 853. The contract was an entirety, and a mortgage of a part would invalidate the whole. May on Ins. secs. 189, 277; Flanders on Ins. 231; 29 Am. St. Rep. 905; 74 Am. Dec. 494; 46 Me. 394; 11 Cush. 290; 40 Md. 620; 36 Wis. 159; 56 Pa. St. 210.

3. The cause should be reversed for irrelevant and incompetent testimony. The question was grossly lead-

·ing, and elicited a legal conclusion.  Sand. & H. Dig. sec. 2957; 1 Gr. Ev. sec, 434.  It was an attempt to vary a written agreement by parol testimony.  1 Gr. Ev. sec. 275.  The property was in the hotel at the time of the execution of the policy, and, the lease having provided for the lien, it became complete as soon as the property was so placed in the hotel.  30 Ark. 56; 35 *id.* 323; Jones on Chat. Mortg. sec. 156.

*N. T. White*, for appellee.

1.  The iron safe clause is almost identical with the clause mentioned in cases 54 Ark. 376, and 38 Fed. 19, and these cases are conclusive.  The words of a policy are to be taken more strongly against the insurer, and in cases of doubt are to be construed against the insurer.  Wood, Fire Ins. (2 ed.) sec. 58; 2 Whart. Cont. sec. 670; 54 Ark. 383; 38 Fed. Rep. 22.  The most reasonable construction of the clause would be that the assured would produce his books and inventory *if possible* to do so.  The law does not demand unreasonable things or exact an impossibility.  38 Fed. 22; 54 Ark. 376; 2 Wood, Ins. sec. 449; 7 A. & E. Enc. Law, p. 1045 and note 4; 63 N. Y. 108.  See 12 N. Y. 92.

2.  The Miller lease was not an incumbrance, within the meaning of the policy.  1 Wood, Ins. sec. 172, p. 402, p. 720, sec. 645 (2 ed.); 73 N. Y. 452; 1 May on Ins. secs. 265, 292; 47 Conn. 553.  But none of the property insured was covered by the lease.  The testimony on this point was clearly admissible to show what property was covered by the mortgage.  51 Ark. 410; 52 *id.* 278; 54 *id.* 158.

3.  The objections to testimony are not tenable.

RIDDICK, J., (after stating the facts.)  We do not find that there was a mortgage on the property insured.  The ruling of the circuit court in regard to the contention of appellant on that point seems to us correct, and

we pass it without discussion. The main question to consider is whether the appellee, Parker, violated the clause in his policy by which he agreed to keep a set of books showing a complete record of all business transacted, and to keep such books "in a fireproof safe at night, and at all times when the store mentioned in the policy was not actually open for business," or in some secure place not exposed to a fire which would destroy the house where the business was carried on, and, in case of loss, to produce such books. The proof shows that he kept the books mentioned in the policy, but he admits that he did not keep them in a fireproof safe, either by day or night, nor in any secure place not exposed to fire. As a result of this failure to keep the books in a fireproof safe at night, they were destroyed by the fire that burned the house in which the business was carried on. Appellee attempts to avoid the effect of failing to keep the books in a safe at night, as required by the policy, by showing that the saloon was kept open for business both night and day, and only closed on Sundays. His contention is that he was only required to keep the books in a safe when the store was closed, and that, as the store was open for business both day and night, therefore he was not required to keep the books in a safe either day or night. In support of this contention, he cites *Sun Insurance Co.* v. *Jones*, 38 Fed. Rep. 19; and *Sun Insurance Co.* v. *Jones*, 54 Ark. 376.

While we agree with the appellee that the clause in this policy is substantially the same as that construed in those cases, we do not think we have in this case the state of facts found in those cases. It is true that some of the expressions of the court in one of those cases may seem to support the contention of appellee, yet, when we consider the facts there, we must conclude that those cases can have little weight here, for it is an established rule that " the language of a court must always

be construed in reference to, and in connection with, the facts before it." *Bell* v. *Tombigbee Railroad Co.*, 4 Smedes & M. 549; Ram's Legal Judgments, 250.

The plaintiffs there had a fireproof safe in their storehouse, in which their mercantile books were kept when not in use. It was their custom to take the books out in the morning, and lay them on the desk for *use* during business hours. They were kept out until the business of the day was closed, and the books were posted and written up, when they were put in the safe and locked up. Both of those cases rested on the same facts, and in both of them it was held that the insured had not violated his covenant to keep the books in a " safe at night," etc., and the insured was held liable on his policy. It was said that "the covenant to keep books, and the covenant to keep them in a safe, must be construed together, and, in the absence of an express stipulation to the contrary, the covenant to keep books will be construed to mean that the books shall be kept in the time and manner usual and customary with merchants." *Sun Insurance Co.* v. *Jones*, 38 Fed. 19.

The covenant to keep the books in a fireproof safe at night, or in some place secure from fire, was recognized as valid and binding, but it was said that the proper construction of that clause was, "not that the books shall be kept in a safe from sunset to sunrise, but that they should be so kept from the time the business of the day is ended, and the store closed for the night."

This construction did no violence to that clause of the policy by which the assured obligated himself to keep his books "in a fire proof safe at night, etc." It only gave it a reasonable interpretation. But this would not be true if we should adopt the construction contended for by appellee in this case. If we should hold that the fact that the store of appellee was kept open night and day, except on Sundays, excused him

from keeping his books in a safe, or some other place secure from fire, what would become of that clause of the policy by which he expressly obligated himself to keep his books "securely locked in a fireproof safe at night," etc. Manifestly, it would be abrogated, and we would, in effect, be making, by construction, a new contract for the parties. The rule in construing the language of an insurance policy is to resolve all doubts concerning its meaning in favor of the assured. But the courts cannot override the plain letter of the contract, or resort to strained constructions, in order to relieve a party from the effects of a failure to comply with his contract.

The object and meaning of the clause of the policy under consideration is, we think, free from doubt. It in effect stipulates that the insured shall keep his books in a fireproof safe, not only at night, but at all other times when the store is not actually open for business. The object in requiring a set of books to be kept, showing a record of the business transacted, and of the changes taking place from day to day in the stock of goods insured, is very apparent. Without such a record, the insurer has no means of ascertaining the amount or value of the goods destroyed, and for which he is liable. Making such a record is of no value unless it can be preserved from the fire that destroys the property. To guard against this, the appellee in this case covenanted that he would "keep such books securely locked in a fire proof safe at night, and at all times when the store mentioned in the policy was not actually open for business, or in some secure place not exposed to a fire which would destroy the house where said business is carried on, and, in case of loss," that he would produce the books.

This court, in *Western Assurance Co.* v. *Altheimer*, 58 Ark. 575, said of a similar provision, that "the stipu-

lations of the 'iron safe' clause constituted an express promissory warranty in the nature of a condition precedent," and that a strict compliance with it was necessary. In his work on insurance, Mr. Wood also says that such promissory warranties must be strictly performed, "and that, too, without reference to the question whether they were material to the risk. The insurer is permitted to judge for himself upon what conditions he will assure a risk, and what is material thereto, and if he sees fit to insert immaterial conditions in the policy, the assured cannot defend against a breach thereof upon that ground. * * * * * * The assured has no election, but must stand upon his performance of them." 1 Wood on Fire Insurance, p. 448.

There is no pretense here that the assured complied with this condition in his policy. Though his saloon was closed on Sundays, yet he says that the books were kept under the counter when not in use, and were not placed in the safe oftener than once a month. In other words, he neither kept his books in a safe at night, nor during those days on which his saloon was closed.

The books were posted by the bookkeeper each night after the close of the business day. They were thus posted on the night of the fire. After that, instead of placing them in a safe, they were put under the counter. We see no valid reason why, after the books were posted, they could not have been kept in the safe during the remainder of the night; at least that book into which the items for each day had been copied might have been thus kept.

Construing the policy in reference to the necessities of the business, we think there is nothing in it that would prevent the night clerk from having access to the books in the event a customer should offer to settle his account, or if for any other reason they were actually needed during the night. The necessity for consulting

the books during the night would have been much lessened had the appellee kept his saloon business separate from that of his hotel. He obligated himself to keep books showing a complete record of his saloon business, and to keep them in a safe at night. It was his own fault that he kept this record in the same books in which the business of the hotel was recorded ; and to show that it would have been inconvenient to open his safe whenever a guest wished to pay his bill is no excuse for a failure to comply with his contract.

However inconvenient it may have been, he had expressly agreed that the saloon books should be kept in a fireproof safe at night, or in some place secure from a fire that might destroy the house where the insured goods were kept, and he should have complied with his contract. He failed to do so, and as a result of that failure the books were destroyed by the fire that burned the house. For this reason the judgment against the appellant company cannot be sustained. It is therefore reversed, and the cause remanded for a new trial.