MAJOR, Respondent, v. INSURANCE COMPANY OF NORTH AMERICA, Appellant.

**St. Louis Court of Appeals, April 18, 1905.**

1. **INSURANCE: Iron Safe Clause: "Opened for Business."** Where a policy of fire insurance on a drugstore provided that it should become void unless the insured kept an inventory and books securely locked in a fireproof safe during the hours said store "is not opened for business," the insured was not compelled to put his books of record and inventory in his safe during a temporary absence, at night, for only a few minutes, before his closing hour, during which the store was left open, and the company was liable for the damages caused by fire which occurred at the time and destroyed the books and inventory.

2. **CHAMPERTY: Pleading.** In an action upon a contract, the defense of champerty is not available unless it is pleaded.

Appeal from Franklin Circuit Court.—*Hon. Wm. A. Davidson,* Judge.

AFFIRMED.

*Reed, Yates, Mastin & Howell* for appellant.

(1) Under our Missouri authorities as well as those of the courts generally, an iron safe clause similar to the one involved in this case has been upheld. The authorities most liberal to the assured declare that a substantial compliance with the conditions of such a clause must be shown before the plaintiff can recover. Crigler v. Insurance Co., 49 Mo. App. 11; Gibson v. Insurance Co., 82 Mo. App. 519; Dry Goods Co. v. Ins. Co., 100 Mo. App. 504, 74 S. W. 469; Niagara Co. v. Forehand, 169 Ill. 626; Goldman v. Insurance Co., 49 La. Ann. 223; Assurance Co. v. Kernendo, 94 Texas 267; Lozano v. Ins. Co., 78 Fed. 278. (2) The sole inquiry is: Was the store not open for business at the time the books and inventory were burned? That it was not

open for business at such time certainly is not debatable under the evidence. (3) This suit having been brought by Major, the assignee of the policy after loss, who thereby became liable for costs of suit, the contract whereby he is to have one-third of the amount recovered as attorney fees is champertous and the assignment void. Duke v. Harper, 66 Mo: 51; Million v. Ohnsory, 10 Mo. App. 432.

*Shepard Barclay, Thomas T. Fauntleroy* and *Oscar Meyersieck* for respondent.

(1) Under the "iron safe clause" in the policy, the store was open for business, and the temporary absence of the insured, without locking up the books, did not render the policy void. Jones v. Insurance Co., 15 S. W. 1034; Jones v. Ins. Co., 38 Fed. Rep. 19; Houghton v. Insurance Co., 8 Metc. (Mass.) 114; Daniels v. Insurance Co., 12 Cush. 416; Turley v. Insurance Co., 25 Wend. 374. (2) There is no such defense set up in the answer. "Champerty is an affirmative defense, not available to defendant, unless pleaded." Comstock v. Flower, 109 Mo. App. 275, 84 S. W. 207. (3) There is no evidence whatever in this case that the attorneys agreed to pay the court costs or any costs or expenses connected with the suit. All of this testimony was ruled out by the court, and rightly so, under the pleadings. Therefore, the cases of Duke v. Harper, 66 Mo. 58-9, and Million v. Rohn, 10 Mo. App. 432, have no application to this case.

GOODE, J.—This is an action on a policy of insurance issued to O. M. Willis and covering a stock of drugs, wines and liquors kept for retail sale in a two-story brick building in the town of Caruthersville, Missouri. The policy contained the following clause:

"It is expressly warranted by the assured that the assured shall take an inventory of the stock hereby covered at least once a year, during the life of this policy,

and shall keep books of account correctly detailing all purchases and sales of said stock and shall keep such inventory and books securely locked in a fire-proof safe, or in some place secure against fire in another building, during the hours said store is not opened for business; and in case of loss the assured agrees and covenants to produce all of said books and inventory and in the event of failure to produce on demand, this policy shall be void and no suit or action at law shall be maintained thereon for such loss."

Willis, the proprietor of the drugstore, was a practicing physician and in the habit of answering calls for his professional services. His custom was to keep his drugstore open for business until eleven or twelve o'clock at night. The fire which destroyed the property occurred Sunday night, January 18, 1903, about nine o'clock. The store had been open through the evening, prior to the fire, and Willis was at work at his desk. He kept an iron safe in his storeroom but his books were not in it when the fire occurred; they were lying either on the desk or a counter. Just before the fire broke out Willis was called to see a lady patient who was reported to be very ill. Her residence was about a block distant and Willis expected to be absent from the store but a few minutes. He was absent from to ten to fifteen minutes and when he returned found the building in flames. His stock of merchandise was burned and with it his business books. Willis could not remember whether or not he locked the door of the store when he went out.

The principal defense is that the clause of the policy requiring an inventory of the stock and books of account to be securely locked in a fireproof safe during the hours the store was not open for business, was violated. As the facts bearing on this question are undisputed, the point to be decided is whether the store can be said not to have been open for business when the fire occurred; that is, whether this is the necessary legal con-

clusion from the facts.    If it is, the policy was violated; otherwise, not.

The trial court instructed the jury that if they found Willis had not closed his store for the night, but went out and left it only a few minutes, to respond to an urgent call, and intended to return and keep it open for business until his closing hour, then he was not compelled by the terms of the policy, to put his books of account and inventory in the safe during such temporary absence.    We regard that instruction as sound.    There was no positive proof that the store was closed.    For aught that appears customers might have entered while Willis was absent and have awaited his return to make purchases. Stores in small towns are often left unwatched for a few moments during such casual absences of the proprietors, and, meanwhile, patrons enter and wait until the proprietor comes back.    Willis swore he intended to return soon and keep his store open for business until his usual closing hour, about midnight.    In fact, he did return in a short time.    He could not keep his account books in the safe during business hours without excessive inconvenience; nor did the policy require him to do so. It only required him to keep them in the safe during the hours the store was not open for business. If we are to be controlled by the wording of the policy, we should say it meant the books must be put where they would be safe from fire during business hours; that is, during the hours the store was usually kept open for business; not every instant the proprietor happened to be out of it.    However, we have no call to decide whether a protracted closing of the store during the business hours of a day would have imposed the duty of putting the books in the safe.    It would be unreasonable to interpret the policy to mean that if Willis had occasion to leave the store on some momentary errand, he was bound to go to the trouble of shutting up his books so they would be protected from fire. The policy did not, in terms, require such a precaution.    On the

contrary, the language used, looks inconsistent with the notion that it was expected.

A similar question came up for decision in Sun Ins. Co. v. Jones, 54 Ark. 376, 15 S. W. 1034. That policy was much stronger in its language than this one, as it required the books of the insured to be kept in a fire-proof safe when his store was not actually open for business; whereas the words here are "during business hours." The fire occurred at night when the door was locked. A salesman had been in the store writing up the record of the day's business; but had gone into an adjoining store, expecting to return in a short time and complete his work. While he was away the fire broke out and destroyed the books and a stock of merchandise. The evidence showed the custom was to keep the door of the store locked after night; but customers seeing the light inside could tell the store was still open for business, and they were admitted on knocking at the door. On those facts it was held the store was still open for business and the temporary absence of the bookkeeper without locking the books in the safe did not render the policy void. The same conclusion was reached in another action on a policy containing the same provision in Jones v. Southern Ins. Co., 38 Fed. 19. In our opinion it hardly admits of debate that the fire in question occurred during the hours when the store was still open for business.

After the loss Willis assigned the policy and the right of action on it to the plaintiff Major, an attorney. The evidence shows the purpose of this assignment was to secure the fees of the attorneys who would represent the plaintiff in litigation over the loss. Their fees were to be a percentage of the amount involved. On this state of facts it is contended the present action was champertous, as Major obligated himself to pay the costs of the litigation. Major sued in his own name and is liable for the costs of this action; but there is no evidence that he agreed with Willis to pay the costs. As

to the defense of champerty, suffice to say it was not pleaded in any form and, therefore, is unavailable. Moore v. Ringo, 82 Mo. 468; Comstock v. Fowler, 109 Mo. App. 275, 84 S. W. Rep. 207.

The judgment is affirmed. All concur.