MERCHANTS' & BANKERS' FIRE UNDERWRITERS v. FOSTER. (No. 1672.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 20, 1916. Rehearing Denied March 1, 1917.)

INSURANCE ⊕➾335(4)—FIRE INSURANCE—CONDITIONS IN POLICY — BREACH — "OPEN FOR BUSINESS."

A fire policy provided that assured should, when store was not "actually open for business," keep his books in a safe or other place secure from fire, and that in case of loss unless books were produced policy would be void. While as-

sured was home for dinner, and while the store was locked, it and the books which were not in safe were burned. A doctor and storekeeper close by, who had keys for store, had agreed to open store for customers while assured was home. *Held*, that assured's failure to place his books in a secure place avoided policy, since at time store was burned it was not "actually open for business."

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 853.

For other definitions, see Words and Phrases, First and Second Series, Open for Business.]

Levy, J., dissenting.

Error from Fannin County Court.

Action by K. B. Foster against the Merchants' & Bankers' Fire Underwriters. Judgment for plaintiff, and defendant brings error. Reversed.

Thompson, Knight, Baker & Harris and Will C. Thompson, all of Dallas, for plaintiff in error. Cunningham & McMahon and L. C. Fuller, all of Bonham, for defendant in error.

LEVY, J. The action is by defendant in error upon a policy of fire insurance issued and delivered by plaintiff in error covering a stock of drugs which were destroyed by fire on November 20, 1914. The defendant specially pleaded a breach of the record warranty clause contained in the policy sued on. The record warranty clause pleaded stipulates that the assured shall keep a set of books, and shall keep and preserve all inventories taken of the stock, and provides:

"The books and inventories and each of the same, as called for above, shall be by the assured kept securely locked in a fireproof safe at night, and at all times when the building mentioned in the policy is not actually open for business, or, failing in this, the assured shall keep such books and inventories, and each of them, in some secure place not exposed to a fire which would destroy said building; and in event of a loss or damage insured against to the personal property mentioned herein, said books and inventories, and each of the same, must be by the assured delivered to the company for examination or this entire policy shall be null and void, and no suit or action shall be maintained hereon for any such loss."

A trial was had before the court without a jury, and a judgment was entered for the plaintiff. The court's findings of fact and conclusions of law follow.

"Findings of Fact.

"(1) That defendant, Merchants' & Bankers' Fire Underwriters of San Antonio, Tex., is an unincorporated insurance concern.

"(2) That on the 5th day of May, 1914, said Merchants' & Bankers' Fire Underwriters, for a valuable consideration paid it by plaintiff, issued and delivered to plaintiff its policy of insurance insuring plaintiff against loss by fire for $500 on his stock of drugs, patent medicines, toilet articles, etc., while contained in a building in Lamasco, Tex.

"(3) That on November 20, 1914, while said policy of insurance was in full force and effect, said stock of drugs, patent medicines, toilet articles, etc., were totally consumed by fire, as were plaintiff's invoices, books of account, etc.

"(4) That plaintiff prepared and delivered to

defendant proofs of loss as required by the policy and within the time prescribed in policy.

"(5) That the fire occurred about noon of November 20, 1914. The plaintiff had gone to his dinner at his home, about one mile from the store. The store was locked, but plaintiff had made arrangements for his customers to get into the store while he was gone to dinner, and for that purpose Dr. Williams and E. P. Smith had a key. Dr. Williams lived about 200 yards from the store, and Smith's store was about 30 feet from plaintiff's. If a customer had come to the store while plaintiff was gone Dr. Williams or E. P. Smith would have let him in and sold him the things he wanted. Williams and Smith had agreed to let people in for plaintiff at any time. The plaintiff left his store at 11:30 or a quarter to 12, and the store was burning when plaintiff returned from his dinner. Plaintiff had no other insurance. The value of the goods burned and covered by the policy of insurance was more than $700. The books, accounts, invoices, etc., required by the policy were kept by plaintiff, and prior to the fire were kept by plaintiff at his residence and away from the store whenever the store was not open for business. The plaintiff had taken the inventories required by the policy, and had done all the things according to the requirements of the policy to make the insurance valid; that plaintiff's books of account, records, inventories and invoices, etc., required by the policy were all consumed by the fire which burned his stock of goods.

### "Conclusions of Law.

"(1) I conclude that the store in which plaintiff's stock of drugs, patent medicines, toilet articles, etc., covered by the policy of insurance herein were kept was, within the meaning of the policy, actually open for business at the time of the fire.

"(2) I conclude that plaintiff is entitled to a judgment against the defendant, Merchants' & Bankers' Fire Underwriters of San Antonio, Tex., for the sum of $427.50."

### Opinion.

The appellant by its assignment of error makes the point that the findings of fact by the trial court conclusively show that the building in question was "not actually open for business" within the meaning of the provision of the policy in that respect, and that the legal effect attaching to such fact is failure of compliance with the provision pleaded in the answer, which rendered the policy by its terms void. The precise findings of the trial court, and to which he attached the legal effect of a compliance with the terms of the provision of the policy in question, are as follows:

"That the fire occurred about noon of November 20, 1914. The plaintiff had gone to his dinner at his home about one mile from the store. The store was locked, but plaintiff had made arrangements for his customers to get into the store while he was gone to dinner, and for that purpose Dr. Williams and E. P. Smith had a key. Dr. Williams lived about 200 yards from the store, and Smith's store was about 30 feet from plaintiff's. If a customer had come to the store while plaintiff was gone Dr. Williams or E. P. Smith would have let him in and sold him the things he wanted. Williams and Smith had agreed to let people in for plaintiff at any time. The plaintiff left his store at 11:30 or a quarter to 12, and the store was burning when plaintiff returned from his dinner."

The state of facts found by the trial court necessarily requires, as determined by a majority of this court, the legal conclusion that the building in question was "not actually open for business" within the meaning of the provision of the policy. And the following authorities discussing the question in point are referred to and here cited: Joffe & Mankowitz v. Niagara Ins. Co., 116 Md. 155, 81 Atl. 281; Penix v. Insurance Co., 106 Miss. 145, 63 South. 346; Insurance Co. v. Parker, 61 Ark. 207, 32 S. W. 507.

There being shown a failure of compliance with the provision of the policy in question, the judgment of the trial court in favor of appellee is not supported and is erroneous. For that reason it is concluded that the judgment should be reversed and here rendered in favor of appellant, and it is accordingly so ordered.

The writer, though, does not agree to the conclusion reached by the majority of the court, and enters a dissent. Upon the facts found by the court it may properly be concluded, I believe, that the fire in question occurred during a time in the day when the drug store was still "actually open for business." The words "not actually open for business," as used in the provision of the policy, have the same meaning as if expressed thus, "not really open for the sale of merchandise therein." And in the facts found by the court the proprietor of the drug store not only had the intention to not suspend business during his dinner hour, but actually arranged with two persons immediately accessible, and furnished them with a key to the door, to attend to the business, which persons were ready, able, and willing to admit customers and to sell them the goods wanted. These facts, it is believed, place appellee within the scope of the stipulation, and there is not an avoidance of the policy under its terms. Major v. Insurance Co., 112 Mo. App. 235, 86 S. W. 883; Insurance Co. v. Jones, 54 Ark. 376, 15 S. W. 1034. There is a distinguishment in the state of facts between the case of Insurance Co. v. Jones, supra, and the case of Insurance Co. v. Parker, 61 Ark. 207, 32 S. W. 507, supra.