CAPITAL FIRE INSURANCE COMPANY v. KAUFMAN.

Opinion delivered July 12, 1909.

1. INSURANCE—VALIDITY OF IRON-SAFE CLAUSE.—A clause in a policy of fire insurance providing that "the books and inventories and each of the same shall be by the assured kept securely locked in a fire-proof safe at night and at all times when the building is not actually open for business" is valid, and a compliance with its terms by the assured is essential to recovery on the policy. (Page 317.)

2' SAME—SUFFICIENCY OF COMPLIANCE WITH IRON-SAFE CLAUSE.—It was not error, in an action on a policy of fire insurance, to instruct the jury in effect that if the plaintiff kept a suitable set of books in an iron safe, and was in the habit of placing them in such safe at night, but on the night of the fire he had not closed the store, but had taken the books to his bedroom upstairs for the purpose of posting them, and intending to return them to the safe that night when posted, and that while the books were in his room they were destroyed by fire, a substantial compliance with the requirement as to keeping books in a safe was shown. (Page 317.)

3. EVIDENCE—PROOF OF LOCAL CUSTOM.—In a suit on a policy of fire insurance covering a stock of goods in a small village, evidence tending to prove the custom at such place in regard to the time of opening and closing stores and the time of writing up the books was properly admitted, where it was a question whether the store was open for business at the time the fire occurred. (Page 317.)

4. APPEAL AND ERROR—HARMLESS ERROR.—Error of the trial court in instructing the jury in effect that a policy of fire insurance might be valid as to household effects insured in it, though void as to a stock of merchandise because no compliance with the iron-safe clause therein is shown, was not prejudicial where the jury found that there was no breach of the iron-safe clause. (Page 318.)

Appeal from Pulaski Circuit Court, First Division; *Robert J. Lea,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellee sued appellant on a policy of fire insurance issued February 15, 1907, insuring for a lump sum of $52 a stock of merchandise and household goods. The insurance on the stock of goods was $1,000, and on the household effects $500. It was alleged that the fire and total loss of the property insured occurred during the life of the policy. The complaint asked judgment for the full amount of the policy, with 6 per cent. interest and penalty and attorney's fees.

The answer set up in defense the application, which was made a part of the contract, and the following stipulations in the policy, to-wit:

"Section 1.   The assured will take a complete itemized inventory of stock on hand at least once in each calendar year; and, unless such inventory has been taken within twelve calendar months prior to the date of this policy, and is on hand at the date of this policy, one shall be taken complete in detail within thirty days after the date of this policy, or this entire policy shall be null and void from such date.

"Section 2.   The assured will make and prepare, in the regular course of business, from and after the date of this policy, a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and on credit, or this entire policy shall be null and void.   By the term 'complete record of business transacted,' as used above, is meant a complete record of all the property which shall go into the premises and be added to the stock, and of all property taken from the stock, whether by the assured or by others, even though not technically purchases or technically sales.

"Section 3.   The assured will keep and preserve all inventories of stock taken during the current calendar year, and also all those taken during the preceding calendar year, which are on hand when this policy is issued, and will keep and preserve all books which are then on hand, showing a record of business transacted during the current calendar year and the preceding calendar year.   The assured will also keep and preserve all inventories taken after the issuance of this policy, and all books made and prepared after the issuance hereof, showing record of business transacted.   The books and inventories, and each of the same, shall be by the assured kept securely locked in a fireproof safe at night and at all times when the building mentioned in the policy is not actually open for business; or, failing in this, the assured shall keep such books and inventories, and each of them, in some secure place not exposed to a fire which would destroy said building; and, in the event of a loss by fire to the personal property mentioned herein, said books and inventories, and each of the same, must be by the assured delivered to this com-

pany for examination, or this entire policy shall be null and void, and no suit or action shall be maintained thereon for any such loss. It is understood and agreed that this clause and the requirements thereof is one of the inducing causes to the acceptance of the risk herein assumed and the issuance of this policy, and that the terms and requirements hereof are material to the risk, and to this insurance, and to any fire loss happening to the property described in this policy. It is further agreed that the receipt of such books and inventories, or the request for them, or either of them, and the examination of same, shall not be an admission of any liability under this policy, nor a waiver of any defense to the same."

It was alleged "that the plaintiff did not preserve the inventory referred to in his application, nor books and invoices referred to therein, in an iron safe at night and at all times when not open for business; and that the same were destroyed in violation not only of the terms and agreements in his said application, but in violation of the terms and agreements in the policy as quoted; whereby the conditions of said policy contract were violated, and the defendant was released from liability."

Appellee was a merchant at Wampoo. She and her husband, who was her business manager (and whom we shall hereafter in the statement designate as the appellee for convenience), lived over the store room. The fire occurred February 8, 1908, first in an adjoining building. It then destroyed the building occupied by appellee and its contents. The stock of goods at the time of the fire was valued at $7,000, and the household effects were valued at $1,100 or $1,200. Appellee's counsel further states the facts correctly as follows: "Every Saturday night appellee posted his books. The store house was cold and uncomfortable, and a stairway led from the store up to the living rooms of appellee. After the active business of the day was over, he turned out the loafers, locked his doors, left his lights burning in the store, and took his books up the short flight of stairs into his bedroom, where he had a good light and warm fire, and a comfortable place in which to work. He generally closed about 10 o'clock, but was in the habit of coming down to wait on customers until he finally put out his lights, and, in case of an urgent call for medicines or necessaries, would come down later. At the

time of the fire he had not extinguished the lights in the store, and had not replaced his books and cash in the iron safe. This was the custom of appellee, and also the custom of the only other store at Wampoo. The owner of the other store closed about ten or eleven o'clock, according to the weather, on Saturday nights, and then left for his home, about a mile or a mile and a half away from his store. The population around Wampoo is pretty nearly all negroes. They get paid off on Saturday, and generally sit around appellee's store, talking, eating peanuts and chewing tobacco until appellee told them he wanted to close up. After appellee finished writing up his books, he would take his cash and his books downstairs into the store, and put them in the iron safe, lock up the safe and extinguish the lights for the night.

The policy of insurance was taken out February 15, 1907. Appellee took an inventory January, 1907, and August, 1907, between the 1st and 5th of the month. These inventories were copied into a large book, in which were kept the accounts of the store and other data of the business. This book was upstairs, and was burned. There were other books in the iron safe at the time, bringing the business down to 1906, and a credit book bringing the business down to the date of the fire. These books appellee had no occasion to have upstairs. There was also a credit ledger in the safe which was saved. Appellee had been at work on the books about an hour before the fire broke out. It was his habit to put the books in the iron safe at night, except on Saturday night, when he took them to his room to post them, leaving the light burning in the store until he finished posting his books. He testified that he intended carrying them down stairs and putting them in the big combination lock iron safe after he had finished work on them. He would then put out the lights in the store. The lights were still burning in the store at the time the fire broke out. The store was 40 feet by 22 feet, and the stairs ran straight up from the inside of the store in the rear of the bedroom.

Wampoo is six miles from the railroad. The postoffice is in appellee's store, and he is the postmaster. The invoices had been entered in the book that was destroyed by fire, and the invoices themselves were wrapped up and put away in pigeon-holes in the

store. When the invoices came in, appellee put them in the safe until Saturday night, when he took them with his book up to his room to copy them. He did not copy the items in detail, but only entered on his book the footings or aggregate amount shown by each invoice.

The court, over the objection of appellant, gave the following instructions:

"1. The court instructs the jury that the insurance on the household effects and upon the stock of merchandise mentioned in the policy sued on are divisible, and that plaintiff is entitled to recover the amount of the policy on the household goods with six per cent. interest from the 29th day of April, 1908, together with a penalty of twelve per cent. on said amount.

"2. The court instructs the jury that they have a right to take into consideration the custom or mode of doing business such as the opening and closing of the store, the time and manner of writing up the books, that was incident or prevailing at Wampoo, Arkansas, the place where the goods insured were located.

"3. The court instructs the jury that if they find from the testimony that plaintiff kept a set of books suitable for the business he was carrying on, and which are ordinarily kept for such business, and that he kept an iron safe such as is provided for in the policy sued on, and that he was in the habit of placing said set of books in such safe after closing up his business, but that on the night of the fire he did not close up his store for the night, but did retire to his room with his books for the purpose of posting the same, and did leave a light burning in the store with the intention of returning to the store with his books when he had finished working on the same for the purpose of placing the same in his safe for the night, but that while the said books were in his manual possession in his private room near the store the alarm of fire was suddenly given, and plaintiff was unable to replace them in his safe, and the said books were then and there burned, then in that event, if the jury so find, the court instructs you that such act on the part of the plaintiff was a substantial compliance with the terms of the policy in reference to keeping his books in his safe, and you will find for the plaintiff upon that point.

"4. The court instructs the jury that if they find from the testimony in the case that plaintiff took an inventory such as

is contemplated in the policy sued on in January, 1906, and again in January, 1907, and such inventory was so taken and kept, but was destroyed by fire without the fault or negligence of the plaintiff, then in that event the jury will find that plaintiff complied with the terms of the policy in reference to the inventory, and you will find for the plaintiff. upon this branch of the case, although a portion of said inventories was destroyed by the fire."

The appellant duly excepted to the ruling of the court in giving the above instructions.

The court refused to give the following prayers of appellant:

"1. The jury are instructed that if the inventory of January, 1907, and the subsequent invoices and the books were destroyed by the fire at about eleven o'clock Saturday night, when they were not in the fireproof safe but elsewhere on the premises, this was a breach of the contract, and you will find for the defendant.

"2. The jury are instructed that if the assured failed to keep and preserve the set of books stipulated and provided for in the policy sued on, and the same were destroyed upon the premises and by the fire which destroyed the stock of goods, and the same were not at the time in a fireproof safe, but upstairs and exposed to the fire, this was a breach of the contract, and you will find for the defendant.

"3. The jury will find for the defendant."

The appellant objected and duly excepted to the rulings of the court in refusing its prayers. The jury returned a verdict for the full amount of the policy, with interest and penalty. A motion for new trial, assigning as errors the rulings of the court to which appellant had excepted, was presented and overruled. Judgment was entered for the amount of the verdict, which this appeal seeks to reverse.

*C. S. Collins* and *Ratcliffe, Fletcher & Ratcliffe,* for appellant.

1. The iron-safe clause is valid, and compliance with its terms is indispensable to recovery. 61 Ark. 207; 62 Ark. 43; 65 Ark. 240. The basis of settlement under its provisions is (1) the inventory; (2) invoices showing purchases which, added to

the inventory, are agreed upon as the aggregate, and (3) from this is tc be subtracted all sales as shown by the books. 65 Ark. 240; 77 S. W. 424; 71 Miss. 919. See also 106 Mo. App. 684, 80 S. W. 289; 60 Neb. 348; 83 N. W. 81. While a custom may in a proper case be shown, it will not be allowed to overturn the express terms of a contract recognizing, but at the same time guarding against, such custom. 58 Ark. 572-3; 12 Cyc. 1091-2; 54 Ark. 23.

The custom attempted to be proved in this case was a special, not a general, custom, and there is no proof that appellant ever had notice of it. It could not affect the contract. 20 Ark. 251; 12 Cyc. 1041. The burden was upon plaintiff to prove the custom and its applicability to the contract. 12 Cyc. 1098. See also 75 Ark. 251; 69 Ark. 380; 65 Ark. 222. The books, inventory and invoices were not preserved in accordance with the contract. It was error to admit estimates of the amount of stock on hand. 65 Ark. 240, 249-50.

2. If it was reasonable for appellee to have his books upstairs at the time of the fire, which is not conceded, it was manifestly unnecessary to have the inventory out. From the testimony it appears that the inventory was either kept loose in the book that was burned, or it was copied into it. It was incumbent on plaintiff to give a satisfactory explanation for the absence of the inventory from the safe. The iron-safe clause is not complied with from either standpoint. 67 S. W. 158; 61 Ark. 207.

3. The entry in the books of the totals of the invoices is no compliance with the contract. 74 S. W. 792; 67 S. W. 153; 82 Ark. 476; 85 Ark. 580; 65 Ark. 240.

4. The inventory taken August, 1907, could not take the place of the one taken January 1, 1907. 65 Ark. 240.

5. The contract was indivisible, and it was therefore erroneous to give the first instruction asked by plaintiff. 71 Ark. 292; 52 Ark. 257.

6. The question of substantial compliance with a contract is one for the jury, especially where the evidence will support a finding either way. 81 Ark. 92, 95; 64 Ark. 34; 76 Ark. 88.

*Joseph Loeb* and *J. W. Blackwood,* for appellee.

1. This is even a stronger case in favor of the appellee than the Jones case, 54 Ark. 376, which settles every question here with reference to the iron-safe clause, the posting of the books at night, the custom of the locality keeping open for business, etc., in favor of the appellee.

2. Nothing in the policy, nor in the law, prescribes what shall go into the books, nor how many books shall be kept. The testimony shows that the inventory was taken in pencil, and afterwards reduced to permanent form in the general book of business. If it was kept in either paper form or book form, that was sufficient.

3. The policy contract does not require that the invoices be itemized.

4. There was a substantial compliance with the contract with reference to the inventory, and that was all that was required. 79 Ark. 163; *Id.* 267.

WOOD, J. (after stating the facts.) The policy provides that "the books and inventories and each of the same shall be by the assured kept securely locked in a fireproof safe at night, and at all times when the building mentioned in the policy is not actually open for business."

It has often been held by this court that a clause in a fire insurance policy similar to the above, and generally designated as the "iron safe clause," is valid, and that a compliance with its terms by the assured is essential to recovery. *Western Assurance Co.* v. *Altheimer,* 58 Ark. 575; *Southern Ins. Co.* v. *Parker,* 61 Ark. 207; *Germania Ins. Co.* v. *Bromwell,* 62 Ark. 43; *Sun Mut. Ins. Co.* v. *Dudley,* 65 Ark. 240.

In the case at bar the evidence was ample to warrant the court in submitting to the jury the question as to whether the appellee had complied with the provisions of the iron-safe clause. The facts in this case bring it clearly within the rules of law announced by this court in *Sun Insurance Co.* v. *Jones,* 54 Ark. 376, and the trial court, on the question under consideration, followed closely the doctrine of that case in its instructions numbered two and three.

Wampoo was situated in a country district, where the great majority were negroes, who, being paid off on Saturday nights, visited the stores at that time and remained for some time in making their purchases. It was proper to prove what the cus-

tom of these stores was in that district or place to accommodate the trade there, and appellant, effecting insurance on a store in such territory, must take notice of the custom of such stores as to their hours of trade as affecting the risk incident to the insurance of such property. There were only two stores in the country district of Wampoo where the people gathered for trade and to get their mail. The custom of these two stores as to the hours of business and trade was therefore necessarily the custom for that territory; and appellant, insuring one of these stores, must be held to have taken the usual or customary hours of business into consideration in consummating its contract with appellee.

"A usage of trade may have a greater or less territorial extent or a more general or restricted one, according to the circumstances which give rise to it." 12 Cyc. p. 1041, and cases cited in notes. There was no error in admitting the evidence of the custom of the two stores in keeping open on Saturday nights, nor in instruction numbered two.

So far as the preservation of the inventories was concerned, they fall under the same clause and the same rule for the preservation of the books; and the court properly submitted the question as to whether appellee had been negligent in preserving these according to the provisions of the policy in its instruction numbered four.

Conceding that the contract of insurance was indivisible under the doctrine announced in *McQueeny* v. *Phoenix Ins. Co.*, 52 Ark. 257 and *Planters Ins. Co.* v. *Lloyd*, 71 Ark. 292, we do not see how the court's instruction number one was prejudicial to appellant. The verdict shows that the jury found that there was no breach of the conditions of the iron-safe clause, and no forfeiture of the policy upon any other ground. Hence the question of the divisibility of the contract did not arise. So appellant is not prejudiced by the erroneous instruction.

This disposes of the instructions given by the court.

The prayers of appellant 1 and 2, which the court refused, in effect told the jury that upon different phases of the undisputed evidence in the case appellant was entitled to a verdict. Prayer number 3 was in form a peremptory direction for appellant. All these prayers were properly rejected.

Finding no reversible error, the judgment is affirmed.