PERLEY R. EATON *vs.* GLOBE AND RUTGERS FIRE INSURANCE COMPANY.

SAME *vs.* GERMAN AMERICAN INSURANCE COMPANY.

SAME *vs.* HARTFORD FIRE INSURANCE COMPANY.

SAME *vs.* AETNA INSURANCE COMPANY.

SAME *vs.* NORTH RIVER INSURANCE COMPANY.

SAME *vs.* PROVIDENCE WASHINGTON INSURANCE COMPANY.

Worcester.    January 18, 1917. — June 5, 1917.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Insurance,* Fire. *Contract,* Construction, Validity. *Waiver. Estoppel. Arbitrament and Award. Fraud. Practice, Civil,* Parties, Conduct of trial: requests and rulings. *Trust. Pleading, Civil,* Writ.

At the trial of an action upon a policy of fire insurance, it appeared that the policy was issued in the State of North Carolina and was in the standard form prescribed by the law of the State of New York. There was no evidence introduced as to the law of either State. *Held,* that the policy must be treated as a contract of insurance at common law.

A common law contract of fire insurance for a term of one year upon "telegraph poles cut and peeled and all other timber products not more hazardous" upon a tract of land in the State of North Carolina contained a provision that the policy should become null and void unless the insured should "take a complete itemized inventory of stock on hand at least once in each calendar year and unless such inventory has been taken within twelve calendar months prior

to the date of " the policy or "shall be taken in detail within thirty days of" that date. At the trial of an action upon the policy, there was evidence of a daily tally record of poles cut, a weekly record of the operators, and, in the back of a "time book," of an accurate summary or inventory of the poles, prepared from the tallies and record books at a date within twelve calendar months before the date of the policy and after the cutting of the poles had been completed. *Held,* that it was for the jury to determine whether such enumeration was kept in good faith and was a compliance with the requirement of the policy as to an inventory, and that it could not be ruled as a matter of law that the policy was void because of a failure of the insured to comply with that provision.

The fire which caused the loss under the policy above described was a large forest fire and continued to burn for more than ten days on a tract difficult to traverse and explore. The plaintiff on the day after the fire started left for his home where his books and papers were kept, five days later notified the insurance broker who had obtained the policies for him and obtained from him a form of notice and twelve days after the fire started caused notice on such form to be delivered to the insurance company. The policy required that immediate notice in writing be given to the company. *Held,* that it could not be ruled as matter of law that an unreasonable delay in the giving of the notice was shown or that the requirement of the policy had not been complied with.

At the same trial it appeared that the plaintiff introduced proofs of loss and it appeared that no objection was made as to the time within which they were made. The preparation of the statement required a careful and extended examination of the tract burned over and the ascertainment of the quantities and sizes of the partially burned poles and logs, as well as their sound value, and the proofs were in accordance with instructions, advice and aid received from agents of the defendant and were on printed blanks furnished by them. A provision of the policy required that, within "sixty days after the fire, unless such time is extended in writing by" the company, the insured should render to the company a statement "signed and sworn to by said insured, stating the knowledge and belief of the insured as to" various details of the loss. *Held,* that the question, whether the statements were sufficient, was for the jury.

On the evidence, at the trial of the action above described, reported by the presiding judge, it further was *held* that the jury were warranted in finding that the defendant, after being fully informed of the date and continuance of the fire and of the conditions out of which the delay arose in giving notice and furnishing statements of loss, as well as of the plaintiff's mode of keeping books of account and making an inventory, at no time unequivocally refused adjustment but on the contrary induced the plaintiff to believe that the only material question in dispute was the amount of loss; and therefore that the defendant waived the requirements of the policy as to sworn statements and was estopped to deny the sufficiency of the statement given by the plaintiff.

At the trial above described it appeared that the parties had submitted the question of the amount of loss to an arbitrator under an agreement which contained a provision that the agreement should "not determine, waive or invalidate any other right or rights of" either party to it. The defendant relied on the award of the arbitrator and asked for a ruling that the plaintiff was bound by the agreement. Evidence was introduced by the plaintiff and was contradicted by the defendant, upon which it was *held* that the jury were warranted in

finding that the plaintiff was induced to sign the agreement through the assurance of an agent of the defendant, upon whom the plaintiff relied completely, that the arbitrator "was not connected with any insurance companies, and that he was not tied up with anybody," whereas he was the managing officer in a corporation comprised of insurance companies, among them the defendant, and that that corporation's principal business was the adjustment of losses for its stockholders; and it *also was held,* that the jury were warranted in finding the entire agreement and arbitration to be void by reason of fraud and to be no defence to the action.

Where a policy of fire insurance is made payable in case of loss to a person other than the insured, as "trustee . . . for collateral for any or all present or future obligations," the insured, in bringing an action for a loss within the terms of the policy, need not state in the writ that the action is brought for the benefit of the trustee.

In an action upon the above described policy, there was in evidence a stipulation, signed by the trustee, that the plaintiff might recover the full amount of the loss, and therefore certain requests by the defendant for rulings of law as to the rights of the trustee if he had brought an action upon the policy were rendered immaterial.

TWELVE ACTIONS OF CONTRACT (two actions being brought under each title above given) upon six policies of fire insurance purporting to cover "telegraph poles cut and peeled and all other timber products not more hazardous" located on the "Carrier Tract," so called, of five hundred and twenty-six acres, which is about six and one half miles from the Holly Ridge station of the Atlantic Coast Line railroad in the State of North Carolina. In six of the actions the plaintiff sought to recover for loss and damage caused by a fire which commenced on October 30, 1912; and in the other six for loss and damage caused by a fire which occurred on or about May 5, 1913. In the first six actions the writs were dated July 16, 1913; and in the other six March 20, 1914.

The cases were referred to an auditor and were heard together by him. His report was favorable to the defendants. The cases afterwards were. tried together in the Superior Court before *Chase,* J. The material evidence and exceptions of the defendants to refusals of the judge to grant certain rulings are described in the opinion.

That part of the charge of the judge to the jury which related to the evidentiary effect of the auditor's report, referred to in the opinion, was as follows:

"Whenever the trial comes on, if it does come on, either side may submit that report [of the auditor] as evidence of the facts stated in it as the finding of the auditor. If neither side wishes it,

the court may either take it himself if he is deciding the case without a jury or have it read to the jury if the case is tried with a jury.  As I have said, the statement of fact made as the finding of the auditor becomes evidence of those facts when that report is read.  If the auditor merely finds in a given case for the plaintiff in a given sum and when the trial comes on that report is put in and nothing else is said or done, no evidence or testimony is in the case to rebut or control the report, then it is considered sufficient upon which to base a finding in accordance with his finding, and such must be the course.  If, on the other hand, testimony is introduced either from the lips of witnesses or through exhibits which tends to control, rebut or overthrow his finding on questions of fact, the case is taken by the jury or by the court upon all the evidence including the auditor's report and their decision is reached.

"The auditor's report then becomes a part of the material evidence in the case just as the testimony of any witness, and it is for the jury to say what weight, what effect, they see fit to give to the auditor's report.  They may place implicit confidence in it and follow it in case they think they ought to.  On the other hand, they can reject it and say, 'we will not be governed by the auditor's report at all, we don't think it is worthy of credit.'  Much may depend in the mind of the jury upon the manner in which the auditor has set about his task as revealed to them through the testimony, the degree of credit which they see fit to give it, if they impose any credit on the report, may be affected largely and increased or diminished by the report itself, by what it says, by its reasoning, by its logic — if there is any in it, by the care and consideration which it tends to show the auditor has given the subject in hand as well as the manner in which he handles the subject.  On the one hand, as I said a moment ago, the jury may say this auditor who served was impartial, unprejudiced, he was a competent and experienced man, he has given great care to this subject, he has gone into it deeply, he has filed a full and fair and accurate report as it seems to us; his conclusions appear to be sound and we will follow them.  On the other hand, the jury may say that the auditor appears to have been a man who did not understand the case at all; 'from his manner of handling the case he appears not to have been competent to decide it; his

findings are confused, he has stated the claims of the parties incoherently to our mind, and to our mind he never understood the real issue in the case. His findings are not reasonable and logical, and we think his report isn't entitled to any serious weight.'

"Those are the two extremes, and between those there are degrees of value and credit which a jury may see fit to place on an auditor's report. Perhaps much relates to the subject in hand. You know perfectly well that one of the principal reasons for referring a case to an auditor is because of the difficulty which the jury have in lack of facilities provided for handling and examining accounts. The testimony after it is in cannot be submitted to you as it is taken by the stenographer and written out. You have to rely upon your recollection and as it may be recalled by arguments of counsel and by the charge of the court. You have no facilities given you for taking notes as the case goes along, and it might not be proper you should take them in case you had facilities. Your recollection must govern and tell you what the evidence is. . . .

"In this case the auditor has made a general finding for the defendant. The auditor finds, in so far as he has authority, for the defendant in each one of these cases. He makes a specific finding of fact with reference to each of the claims of the plaintiff and the defendant. He has made certain findings with reference to the claims of the plaintiff that he was deceived. He has made certain findings about Clarke and about his impartiality. He has made other findings about the loss. You are entitled to take those findings, consider them, as in fact you ought to consider every part of the testimony. You cannot disregard any portion of the testimony. It is your duty to take it all; it is your duty to take the auditor's report and give it such credit as you think you ought to, and after you have considered all the testimony make up your mind in the case and decide in accordance with your belief and conviction, bearing in mind that the burden is upon the plaintiff not only to sustain his claim in respect to what I have first noted with reference to the first branch of the case but with reference to the last. The plaintiff must satisfy you that his claim with respect to the total loss is correct, and that you must be satisfied by the fair weight of the evidence that the poles which he claimed to have been burned out of sight were in fact burned

out of sight, so that you can say beyond conjecture, beyond guessing, that such was the fact."

The judge submitted certain special questions to the jury, which, with the jury's answers thereto, were as follows:

"1. Was the appointment of Arthur A. Clarke as arbitrator procured by the defendant by means of fraud and false pretences?" The jury answered "Yes."

"2. Was Arthur A. Clarke, the arbitrator, disinterested and impartial?" The jury answered "No."

"3. Was the question of whether any poles or logs were completely burned, and if so, how many, submitted by all parties interested in the loss to the arbitrator and decided by him?" The jury answered "Yes."

"4. What is the whole amount of the plaintiff's total loss and damage from the first fire?" The jury answered "$34,650."

"5. What is the whole amount of the plaintiff's total loss and damage from the second fire?" The jury answered "$3,500."

The defendants then conceded that the jury would answer the remaining questions which had been prepared for submission to them favorably to the plaintiff, saving their exceptions to the submission of these questions to the jury; and therefore, by direction of the judge, these questions were answered as follows:

"Q. Was immediate notice in writing of the loss given by the plaintiff?" The jury answered "Yes."

"Q. Was the notice of Eaton given within a reasonable time after Charles F. Baker had knowledge of the loss?" The jury answered "Yes."

"Q. Was any insufficiency or invalidity of the notice waived by the defendant?" The jury answered "As to the plaintiff, Yes; as to Charles F. Baker, Yes."

"Q. Did the plaintiff make a complete itemized inventory of stock within the twelve calendar months prior to the dates of the policies?" The jury answered "Yes."

"Q. Did the plaintiff keep such a set of books as is described in the policies?" The jury answered "Yes."

"Q. Did the defendants waive any defects in or insufficiency of such inventory and books of the plaintiff if in any respects they were not in compliance with the terms of the policy?" The jury answered "Yes."

"Q. Was the plaintiff guilty of any fraud or false swearing in any material statements contained in the proof of loss?" The jury answered "No."

By agreement of the parties, verdicts were returned by order of the judge for the plaintiff in each action as to the first fire, excepting that against the North River Insurance Company, in the sum of $5,542.32, and in the action against the North River Insurance Company in the sum of $2,771.16; and, in the corresponding actions as to the second fire, for $547.61 and $273.80 respectively; and the judge reported the cases for determination by this court.

*C. E. Tupper,* (*G. H. Richardson* with him,) for the plaintiff.

*F. W. Brown,* (*W. L. Came* with him,) for the defendants.

BRALEY, J. By the terms of the report, if no error of law appears, judgment for the plaintiff shall be entered on the verdicts, and all material questions raised by the defendants except the rulings on the admission and exclusion of evidence, are covered by their exceptions to the refusal of their first request, common to all the cases, that upon the evidence the plaintiff could not recover, as the subsequent requests are merely specifications of the grounds upon which the first request was asked.

The issuance of the policies, the occurrence of the fires, and consequent loss to the plaintiff to some extent, although denied in the answers, were abundantly proven if not expressly admitted at the trial. But, in avoidance of liability, while the defendants relied in the actions to recover for loss or damage under the first fire on the defences, that immediate notice in writing of the occurrence of the fire was not given nor proofs of loss duly furnished, they also averred in the answer to all the actions, that the policies had been forfeited because of the failure of the plaintiff to make an inventory, and pleaded the award in bar of any right of recovery for either fire.

The policies with one exception, although issued in North Carolina, are stated by counsel for the parties to be in the standard form prescribed by the laws of the State of New York; yet as no evidence of the law of either State has been introduced, the policies are to be treated for the purposes of our decision as contracts of insurance at common law.

The policies were for the term of one year from August 2, 1912, with the exception of the policy issued by the Globe and Rutgers

Fire Insurance Company, which ran from September 27, 1912. By each policy the plaintiff was insured against loss or damage by fire on: "All telegraph poles cut and peeled and all other timber products not more hazardous or while located on the lot or drawn out alongside the Logging Railroad or while on or in cars at the assured's risk or unloaded alongside thereof for reloading at any point on said Logging Railroad leading from Holley Ridge Station of the Atlantic Coast Line Railroad Lot of 526 acres known as the Carrier Tract in Pender County, North Carolina. This insurance is intended to cover said property which is owned or held in trust or sold but not delivered or removed from the time cut until the time loaded on cars and forwarding orders given and received taken from the Railroad relieves the assured of any further liability," and were made payable in case of loss or damage to "Charles F. Baker of Fitchburg, Mass., trustee . . . for collateral for any or all present or future obligations."

The following clause, in so far as material, denominated as the "iron safe clause," was attached by a rider to the face of the policies:

"The following covenant and warranty is hereby made a part of this policy:

"1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this Policy, one shall be taken in detail within thirty days of issuance of this Policy, or this Policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

"2. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided for in first section of this clause, and during the continuance of this Policy. . . . In the event of failure to produce such set of books and inventories for the inspection of this Company, this Policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

The first fire occurred October 30, 1912, and the second fire on or about May 5, 1913.

It is the defendants' contention that the policies were forfeited because the evidence conclusively shows as matter of law, that the plaintiff had failed to comply with the first clause of the promissory warranty requiring an inventory. The object of this clause is to facilitate the ascertainment of the extent of the loss. *Georgia Home Ins. Co.* v. *Allen,* 119 Ala. 436. It is plain that it is inapplicable to standing timber which had not been converted. *Southern Fire Ins. Co.* v. *Knight,* 111 Ga. 622. *Sowers* v. *Mutual Fire Ins. Co.* 113 Iowa, 551. The cutting of the trees however had been "practically completed" before the policies issued, and if the poles and logs obtained are considered as articles which may be bought and sold in trade, the jury could find that as the trees were felled, peeled and cut into logs where they lay, each pole was measured, marked and tally slips made, or the number of poles and logs with their dimensions were entered in memorandum books with the number cut by each workman, and that the contents of the tallies and the memoranda were reported daily to the plaintiff's manager who kept in the tally books a weekly record of the operations. *Burgess* v. *Alliance Ins. Co.* 10 Allen, 221. *Van Patten & Marks* v. *Leonard,* 55 Iowa, 520. *Torrey* v. *Shawano County,* 79 Wis. 152. A time book which was properly admitted in evidence also showed not only the number of men employed by the day or hour with an account of their work and payment of wages, but the total number of logs and poles. It is manifest that upon this evidence independently of any concession of the defendants, the jury could find that proper books of account as required by this clause had been kept, and they further could find on the plaintiff's testimony, that in the back part of the time book there was an accurate summary or inventory of the poles taken in March, 1912, after the cutting had been completed, which had been prepared from the tallies and the books. The question was one of fact. *Burnett* v. *American Central Ins. Co.* 68 Mo. App. 343. *Morris* v. *Imperial Ins. Co.* 106 Ga. 461. *Jones* v. *Southern Ins. Co.* 38 Fed. Rep. 19. *Liverpool & London & Globe Ins. Co.* v. *Kearney,* 180 U. S. 132.

The jury also were to decide whether the enumeration in the tally books, which they could find were made in good faith, specifically naming each pole and log with its dimensions, was a compliance with this clause. *Georgia Home Ins. Co.* v. *Allen,*

119 Ala. 436.  *Jones* v. *Southern Ins. Co.* 38 Fed. Rep. 19.  It also would seem to be obvious or the jury could say, that in view of the necessary character of the business described in the policies, no formal separate schedule headed "inventory" could have contained anything more definite under the requirements of this clause as contemplated by the parties when the policies were issued, than the schedule in the tally books.  *Paltrovitch* v. *Phoenix Ins. Co.* 143 N. Y. 73, 77.  *Smith* v. *Commonwealth Ins. Co.* 49 Wis. 322. The affirmative answers of the jury, that the plaintiff made a complete itemized inventory of stock within twelve calendar months prior to the date of the policies and kept a set of books as described in the policies, were well warranted for the reasons stated.

But before he could recover the plaintiff was required to prove that immediate notice in writing of the fire was given, and proof of loss furnished in compliance with the provision, that within "sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the property; the cash value of each item thereof and the amount of loss thereon."  The sufficiency of the notice and proof of loss arising under the second fire are conceded, and the question, whether these conditions were complied with, relates only to the loss under the first fire.

When the locality of the fire, which was a large forest fire and continued to burn for more than ten days over a tract difficult to traverse and explore, is considered with the circumstances, that the plaintiff, on the day after the fire started left for his home here where his books and papers were kept, and on November 4 notified the insurance broker who had obtained the policies for him, and within four days after the broker had drafted a form of notice, sent the notice to the agent in North Carolina who had issued, countersigned, and received the premiums on all the policies except the policy of the Globe and Rutgers Fire Insurance Company, with a letter stating that a loss had occurred, it could not have been ruled as matter of law that unreasonable delay was shown, if a period of some twelve days elapsed from the beginning of the fire before notices could be properly prepared and given to

the defendants. *Smith* v. *Scottish Union & National Ins. Co.* 200 Mass. 50, 53, 54, 55. *Greenough* v. *Phoenix Ins. Co.* 206 Mass. 247, 249. *Solomon* v. *Continental Fire Ins. Co.* 160 N. Y. 595.

The record states that "The plaintiff introduced . . . proofs of loss covering the fire of October 30, 1912, and May 5, 1913, and one proof of loss was introduced in lieu of all the others, and no objection was made as to the time in which they were made;" and the defendants' request 5, c. that "No satisfactory proof of loss was ever given by Eaton to the defendant; no statement of loss of any kind was ever given by Baker to the defendant, and there is no evidence from which it can properly be found that the defendant waived or has become estopped from setting up in defence to this action the failure of Eaton to give such proof of loss" was denied rightly.

The jury, if they found the evidence introduced by the plaintiff to be true, could not have been unmindful, that the statement of loss required a careful and extended examination of the tract burned over, the ascertainment of the quantities and sizes of the partially burned poles and logs, as well as their sound value, and that the proofs were in accordance with the instructions, advice and aid received from the defendants' agents and were on printed blanks furnished by them. The question whether the statements were sufficient was for the jury. *Blake* v. *Exchange Mutual Ins. Co.* 12 Gray, 265, 271. *Greenough* v. *Phoenix Ins. Co.* 206 Mass. 247, 249. *Solomon* v. *Continental Fire Ins. Co.* 160 N. Y. 595.

The questions, whether the defendants waived any insufficiency or invalidity of the notice or any defect or insufficiency of the inventory or the keeping of books of account, if in any respect they were found not to be in strict compliance with the terms of the policies, also was for the jury's determination. While "waiver is the intentional relinquishment of a known right," it is also a question of fact which may be established by direct evidence, or can be inferred from the circumstances which in the cases at bar include the declarations and conduct of the defendants and their authorized agent or agents. *Blake* v. *Exchange Mutual Ins. Co.* 12 Gray, 265, 271, 272. *Little* v. *Phoenix Ins. Co.* 123 Mass. 380, 388, 389. *Carson* v. *Jersey City Ins. Co.* 14 Vroom, 300. The extensive and voluminous correspondence, the personal interviews and negotiations between the plaintiff,

his counsel and the defendants, and the attempt to make an adjustment, in which every material question was discussed and considered up to the time appraisers were selected and went to the locality to ascertain the amount of loss, as shown by the evidence in the admission of which as carefully restricted by the presiding judge we find no error, coupled with the inferences the jury could legitimately draw, warranted them in finding, when the narrative is read consecutively, that the defendants after being fully informed of the date and continuance of the fire and of the conditions out of which the delay arose in giving notice and furnishing statements of loss, as well as the plaintiff's mode of keeping books of account and making an inventory, at no time unequivocally refused adjustment, but on the contrary induced the plaintiff to believe that the only material question in dispute was the amount of loss. *Graves* v. *Washington Marine Ins. Co.* 12 Allen, 391. *Searle* v. *Dwelling House Ins. Co.* 152 Mass. 263, 265. *Moore* v. *Wildey Casualty Liability Ins. Co.* 176 Mass. 418, 420, 421. *Walker* v. *Lancashire Ins. Co.* 188 Mass. 560, 562. *Weed* v. *Hamburg-Bremen Fire Ins. Co.* 133 N. Y. 394. *Knights of Pythias* v. *Kalinski,* 163 U. S. 289.

We now come to the agreement for arbitration and the award. While the proceedings before the appraisers were in progress, negotiations originating with the defendants were entered into with the plaintiff for the purpose of submitting the amount of loss to a single arbitrator. This agreement entitled "Agreement for Arbitration," voluntarily executed by the parties, after reference to the policies, the property insured, the basis for adjustment of loss stated in the policies, the disagreement of the parties as to the amount of sound value, and the loss and damage with a recital of the provision for an appraisement in the event of disagreement as to the amount of loss, states: "It is however expressly understood that this agreement of appraisement . . . shall not determine, waive or invalidate any other right or rights of any party to this agreement." But, as pointed out, the jury could find that the conditions precedent had been performed, and the alleged forfeiture had not been proved, or that the defendants had waived these defences, which having been once waived, could not be revived at their option for the purpose of defeating the award if it was deemed by them unsatisfactory. *Weed* v. *Hamburg-*

*Bremen Fire Ins. Co.* 133 N. Y. 394. *McCoubray* v. *St. Paul Fire & Marine Ins. Co.* 50 App. Div. (N. Y.) 416, 418, affirmed 169 N. Y. 590. *Ohio & Mississippi Valley Railway* v. *McCarthy,* 96 U. S. 258. See *Allesina* v. *London & Liverpool & Globe Ins. Co.* 45 Ore. 441, 442; 2 Ann. Cas. 284, and note 285.

The arbitration agreement is executed in the name of each defendant by one Ives whose authority preceding and in procuring the reference has never been denied. Indeed it would be extraordinary on the one hand for the defendants to rely on the award, and to repudiate on the other hand the acts of Ives, which would be equivalent to saying that the agreement never had been lawfully executed in their behalf. Furthermore, if the defendants, after receiving the notice and proof of loss and with full knowledge of the plaintiff's mode of doing business and of his claims and demands, and after having made a full investigation and submitting the amount to be paid to arbitration, are permitted to repudiate and avoid the award if advised that such course was expedient, a manifest injustice results. *Jacobs* v. *St. Paul Fire & Marine Ins. Co.* 86 Iowa, 145. The plaintiff although he had acted in good faith and in reliance on the representations either express or reasonably to be implied from what had been done, and after having been subjected to the delay and large expenses incurred during the time intervening between the date of the first fire in endeavoring to obtain an adjustment of his losses, would be in the same position as when he began, while, if valid, the defendants who accepted the award, had been provided with an additional and conclusive defence. The jury were correctly instructed, that if they found the award to be valid the plaintiff could not recover. The plaintiff however declined to accept, and, having ascertained as he testified that the arbitrator, one Arthur A. Clarke, was not disinterested but was partial to the defendants, of which condition he was ignorant when he consented to arbitration, the issues involving the disinterestedness of the arbitrator and the validity of the award were for the jury under appropriate instructions. *Doherty* v. *Phoenix Ins. Co.* 224 Mass. 310. It often has been decided, that where a party to an award "is aware of the existence of conditions which may influence the judgment of an arbitrator or referee, or previous to the hearing has sufficient notice of the partiality of one or more of the referees to

put him upon inquiry but remains silent, he cannot afterwards object to the award or report on the ground of partiality." *Doherty* v. *Phoenix Ins. Co.* 224 Mass. 310, 315, and cases cited.

It appears that the arbitrator was the salaried manager of a corporation known as the General Adjustment Bureau, described by the judge in instructions to which no exceptions were taken as having "amongst its ninety-three stockholders these defendant companies which had for its business principal or otherwise, the adjustment of losses for its stockholders and other insurance companies and the investigation of losses and furnishing of information to insurance companies." The judge also correctly told the jury, "the first item of importance . . . for your consideration of this subject is whether or not the plaintiff did really know what the General Adjustment Company was. If he did this disposes of the whole question. The burden is upon him to satisfy you that he did not know." "If it appears that he had means of ascertaining the falsity of the statement made to him or that the nature of the transaction and circumstances attending were such as to put a reasonable person upon inquiry, the presumption of deceit arising upon proof of fraud will be repelled and the party will be left to take the consequences of his own want of due care, diligence and caution, and the party cannot escape from an obligation which he has voluntarily assumed on the ground he has been defrauded if he neglects to avail himself of the means of information within his reach . . ." It is necessary to state because of the elaborate argument for the defendants on the evidence, that the credibility of witnesses is not before us. The jury were to decide as matter of fact whether the plaintiff had any information which should have put him upon inquiry, and whether under all the circumstances, and acting as a reasonably prudent man, he was justified without further investigation in relying on the representations of Ives. *Townsend* v. *Niles*, 210 Mass. 524, and cases cited.

The previous conduct of the arbitrator when acting in the incompleted proceedings of the adjustment and appraisement, and his failure to disclose to the plaintiff his business relations with the defendants in connection with the General Adjustment Bureau, and the meagre amount of the award which could be found to be wholly disproportionate, need not be discussed. If the jury be-

lieved the plaintiff's evidence, even if he had received letters written before the agreement for arbitration was signed from the manager of the General Adjustment Bureau, and knew of its system, and that the arbitrator was connected with it in some capacity, he had no information concerning its membership, or the general character of its business, or the duties of its manager, until the hearing before the auditor to whom the cases had been referred, and that relying solely upon the representations of Ives, in whom he placed implicit confidence, that the arbitrator "was not connected with any insurance companies, and that he was not tied up with anybody," he signed the agreement for arbitration. It also was a question of fact whether by the words "not connected with anybody," Ives intended the plaintiff should understand that the defendants were referred to, or whether he was speaking of the arbitrator's impartial attitude toward the world at large. *Peterson* v. *Morgan Spring Co.* 189 Mass. 576, 579. If these conclusions were reached, the jury properly could find, as shown by their answers to the first and second questions, that the appointment of the arbitrator was procured by the defendants "by means of fraud and false pretences," and that he was not "disinterested and impartial." The whole transaction under these findings was vitiated, and all the subsidiary requests relating to the selection of the arbitrator, and the validity and binding effect of his award, were denied rightly. *Doherty* v. *Phoenix Ins. Co.* 224 Mass. 310. *Aetna Ins. Co.* v. *Stevens,* 48 Ill. 31. *Bradshaw* v. *Agricultural Ins. Co.* 137 N. Y. 137.

The instructions regarding the evidentiary effect of the auditor's report were also correct, and the defendants' requests that there was no evidence to control the auditor's findings which were in their favor could not have been given. *Fair* v. *Manhattan Ins. Co.* 112 Mass. 320.

The plaintiff was not required to state in each writ that the action was brought for the benefit of the trustee. *Kelly* v. *Greany,* 216 Mass. 296. *Hall* v. *Henry Thayer & Co.* 225 Mass. 151, 153. It does not appear that there were any defences open to the defendants if the trustee had sued which were not available against the plaintiff. And the plaintiff's right to recover for the full amount of the loss with the consent of the trustee which appears in the stipulation filed before the auditor without objection by

the defendants, renders immaterial the question of parties plaintiff as well as the defendants' requests as to the rights of the trustee if he had brought suit on the policies. *Coulter* v. *Haynes,* 146 Mass. 458. *Jackson* v. *Farmers' Mutual Fire Ins. Co.* 5 Gray, 52. *Turner* v. *Quincy Mutual Fire Ins. Co.* 109 Mass. 568. *Palmer Savings Bank* v. *Ins. Co. of North America,* 166 Mass. 189. *Swaine* v. *Teutonia Fire Ins. Co.* 222 Mass. 108, 110. *Collinsville Savings Society* v. *Boston Ins. Co.* 77 Conn. 676. It also has been held, under policies in the form of the present contracts, that no duty is imposed on the trustee to give notice or to furnish proofs of loss. *Heilbrunn* v. *German Alliance Ins. Co.* 140 App. Div. (N. Y.) 557, affirmed in 202 N. Y. 610.

The submission to the jury of the questions and their answers, that as to the trustee notice was given within a reasonable time after he had knowledge of the loss, and that the defendants had waived any insufficiency or invalidity of notice of loss, as well as the requests concerning his relations to the parties and to the litigation need not be further considered.

The exception to the exclusion of evidence has not been argued. And in so far as not previously referred to, an examination of the rulings as to the admission of evidence, the refusal of the requests, the submission of special questions to the jury, the instructions, and the direction of verdicts for the plaintiff after the defendants apparently had conceded that if the answers of the jury to the first five questions were warranted nothing substantially remained but to compute the amount of damages on the basis of the policies, show no error requiring a new trial. *Hart* v. *Brierley,* 189 Mass. 598, 604.

The result is that in each action the plaintiff is to have judgment on the verdict.

*So ordered.*