DOZARK, Respondent, v. WESTCHESTER FIRE INSURANCE COMPANY, Appellant.

(209 N. W. 652.)

(File No. 5684.   Opinion filed July 6, 1926.)

1. **Insurance.**

   Iron-safe clause held not inconsistent with standard policy, but permissible under exception in Rev Code 1919, § 9198, subd. 6.

2. **Insurance.**

   Iron-safe clause, properly attached and made part of policy, constitutes a promissory warranty, breach of which defeats right of recovery.

3. **Insurance—Operative Effect of Iron-Safe Clause Held Not Postponed for 30 Days, Where Insured Had Taken Inventory Within 12 Months.**

   Operative effect of iron-safe clause held not postponed till 30 days after policy takes effect, where insured had taken inventory within 12 months prior to issuance of policy, and so was not required to take one within 30 days thereafter.

---

Note.—See, Headnote **(1)** and **(2)**, American Key-Numbered Digest, Insurance, Key-No. 335(1), 26 **C. J.** Sec 317; **(3)** Insurance, Key-No. 335(1), 26 **C. J.** Sec. 318.

Conditions in fire policy as to keeping, producing, and preserving books and papers, see notes in 51 L. R. A. 698; L. R. A. 1915F, 759.

Sufficiency of bookkeeping to satisfy conditions of insurance policy, see note in 39 A. L. R. 1443.

---

Appeal from Circuit Court, Brule County; Hon. FRANK B. SMITH, Judge

Action by Anton Dozark against the Westchester Fire Insurance Company. From the judgment for plaintiff and order deny-

ing a new trial, defendant appeals. Reversed and remanded, with directions.

*Waggoner & Stordahl,* of Sioux Falls, for Appellant.

*J. E. House,* of Chamberlain, for Respondent.

KNIGHT, Circuit Judge   This is an appeal from a judgment for plaintiff in an action upon a policy of fire insurance on the standard form prescribed by section 9199, R. C. 1919, and from an order denying defendant's motion for a new trial.

The property described in the policy, a stock of general merchandise, was totally destroyed by fire on November 28, 1922, at night and at a time when the store mentioned in said policy was not actually open for business. Prior to November 2, 1922, said property was insured by appellant under a policy practically identical with the policy sued on, and in his complaint plaintiff alleges, in effect, that the last-mentioned policy which became effective on November 2, 1922, was a renewal of the former policy. The policy which forms the basis of this action had annexed thereto and forming a part thereof a so-called rider in words and figures as follows:

"Inventory Iron-Safe Clause."

"It is made a condition of this insurance; (1) That the assured under this policy shall take an inventory of the stock and other personal property hereby insured at least once every twelve months during the term of this policy, and unless such inventory has been taken within one year prior to the date of this policy, one shall be taken in detail within thirty (30) days thereafter; (2) that the assured shall keep a set of books showing a complete record of business transacted, including all purchases and sales both for cash and credit; (3) that the assured shall keep such books and inventory securely locked in a fireproof safe at night, and at all times when the store mentioned in the within policy is not actually open for business, or in some secure place not exposed to a fire which would destroy the building where such business is carried on; (4) that in case of loss the assured shall produce such books and last inventory."

[1] The respondent contends that this rider, commonly known, and hereinafter referred to, as the iron-safe clause, is not

properly a part of the standard form of fire insurance policy, is prohibited by section 9198, R. C. 1919, and that no forfeiture of his rights under said policy and no defense to this action can be predicated upon his failure to comply therewith.

Section 9198, R. C. 1919, so far as applicable to this case, is as follows:

"No fire insurance company shall issue any fire insurance policies on property in this state, other than those of the standard form set forth in the succeeding section, except as follows: * * *

"(6)  Printed or written forms of description, specification or schedules of the property covered by any particular policy and any other matter necessary to clearly express all the facts and conditions of insurance of any particular risk, which are not inconsistent with the provisions or conditions of the standard policy provided for in this section, may be written upon or attached to any policy issued on property in this state."

The last paragraph of the standard policy contains the following provision:

"This policy is made and accepted subject to the foregoing stipulation and conditions, *together with such other provisions, agreements or conditions* as may be indorsed hereon or added hereto. * * *"

It is apparent from the reading of these statutory provisions that other provisions, agreements, or conditions which are not inconsistent with the provisions or conditions of the standard policy, and which are necessary clearly to express all the facts and conditions of any particular risk, may be written upon or attached to the standard form of policy.  The iron-safe clause should not be given effect, unless it clearly comes within the exception provided for in subsection 6 of the section 9198, R. C. 1919, above quoted, nor unless it is consistent with the provisions and conditions of the standard policy.  In deciding this question we may well consider the purpose of the law providing for a standard form of policy, and the effect of the clause in question.  The wisdom of the Legislature in adopting the standard policy, and in prohibiting the use of other forms is apparent.  This enactment constitutes a salutary rule of law based upon public policy, and is intended to do away with the evils arising from the insertion in policies of

insurance of conditions ingeniously worded which restrict the liability of the insurer, or place unreasonable conditions upon the insured, the purpose was to accomplish fairness and equity between the insurer and the insured, brevity and simplicity, the avoidance of technical words and phrases, and the avoidance of conditions the violation of which by the insured would without being prejudicial to the insurer, render the policy void or voidable at the option of the insurer.

In Lawyer v. Globe Mutual Insurance Co., 25 S. D. 549, 127 N. W. 615, in speaking of the standard form of fire insurance policy, we said:

"It may be assumed, perhaps, that the purpose of such legislation is to protect the insured against ambiguities, uncertainties, and inequitable conditions and forfeitures with which the insurer has been prone to burden the contract of insurance, and which have been the occasion of much litigation, and difficulty, and perhaps diversity, of interpretation by the courts, and at the same time to afford the insurer just and reasonable protection against fraud and imposition on the part of the insured."

The use of the standard form of policy is compulsory and its provisions not only constitute the contract between the insurer and the insured, but the law governing the rights of the parties as well. Lawyer v. Globe Mutual Insurance Co., supra; Hronish v. Home Insurance Co. 33 S. D. 428, 146 N. W. 588.

The apparent object of the iron-safe clause is to facilitate the ascertainment of the extent of any loss occasioned by fire during the life of the policy. In section 322, 14 R. C. L. 1139, the following language is used:

"The evident intention of this clause of the contract is to enable the insurance company, by means of accurate records of the business of the insured, to ascertain with substantial certainty and definiteness the value of the stock of goods destroyed by fire. The condition has sometimes been said to be a condition precedent, but it is more accurate to say that it is a promissory warranty, or condition subsequent. This clause, now almost universally introduced into policies of insurance of merchandise kept for sale against loss by fire, has been of frequent consideration by the courts, and usually it has not been subjected to any narrowness or

closeness of construction.  Legal effect has been given it for the purpose of guarding the insurer against the fraud or imposition of the insured; but it has received a fair, reasonable interpretation, so' that it may not work forfeitures, or defeat the claim of the innocent insured to the indeminty promised by the policy."

The following to the same effect is quoted from 26 C. J. 249:

"In order to expedite the proof of loss and to verify the honesty of the claim of loss a policy upon a stock in trade customarily contains a provision requiring insured to take an inventory at frequent intervals, to keep regular books, and to preserve all papers in an iron or fireproof safe.  This provision known as the 'iron-safe clause' and usually contained in a rider attached to the policy, has been almost uniformly held valid and enforceable."

In Miller v. Home Insurance Co., 127 Md. 140, 96 A. 267, Ann. Cas. 1918E, 384, the court said:

"The effect of such a covenant, if duly observed, is to safeguard the interests of both parties to the contract.  It provides a protection to the insurer against possible misrepresentation as to the quantity and value of merchandise for which indemnity is claimed, and it affords the assured a reliable and convenient method of ascertaining and proving the real extent of his loss."

The authorities are practically unanimous in holding the iron-safe clause to be a reasonable and valid condition.  We cite only a few of these:  2 Cooley's Briefs on Insurance, p. 1813; 6 Cooley's Briefs on Insurance, p. 574; Sowers v. Mutual Fire Insurance Co., 113 Iowa, 551, 85 N. W. 763; Day v. Home Insurance Co., 177 Ala. 600, 58 So. 549, 40 L. R. A. (N. S.) 652; Reynolds v. German-American Insurance Co., 107 Md. 110, 68 A. 262, 15 L. R. A. (N. S.) 345; Joffe v. Niagara Fire Ins. Co., 116 Md. 155, 81 A. 281, 51 L. R. A. (N. S.) 1047, Ann. Cas. 1913C, 1217; Coggins v. Aetna Ins. Co., 144 N. C. 7, 56 S. E. 506, 8 L. R. A. (N. S.) 879, 119 Am. St. Rep. 924; Gish v. Insurance Co. of North America, 16 Okl. 59, 87 P. 869, 13 L. R. A. (N. S.) 826; Eaton v. Globe Fire Insurance Co., 227 Mass. 354, 116 N. E. 536; King v. Concordia Ins. Co., 140 Mich. 258, 103 N. W. 616, 6 Ann. Cas. 87; Hanover Fire Ins. Co. v. Wood, 213 Ala. 132, 104 So. 224, ?9 A. L. R. 1436; Aetna Ins. Co. v. Goldman, 33 Ga. App. 715, 128 S. E. 13; Germania Fire Ins. Co. v. Ft. Worth Grain &

Elevator Co. (Tex. Civ. App.) 271 S. W. 256; Hughes Bros. v. Aetna Ins. Co., 148 Tenn. 293, 255 S. W. 363; Georgia Home Ins. Co. v. Allen, 128 Ala. 451, 30 So. 537; Hester v. Scottish Union & National Ins. Co., 115 Ga. 454, 41 S. E. 552; Farmers' Fire Ins. Co. v. Bates, 65 Ill. App. 37; Maupin v. Scottish Union & National Ins. Co., 53 W. Va. 557, 45 S. E. 1003; Chamberlain v. Shawnee Fire Ins. Co., 177 Ala. 516, 58 So. 267; Capital Fire Ins. Co. v. Kaufman, 91 Ark. 310, 121 S. W. 289; Hartford Fire Ins. Co. v. Hallis, 58 Fla. 268, 50 So. 985; Finleyson Bros. v. Liverpool & London & Globe Ins. Co. 16 Ga. App. 51, 84 S. E. 311; Springfield Fire & Marine Ins. Co. v. Halsey, 34 Okl. 383, 126 P. 237.

The standard policy provides that in case of loss immediate notice must be given to the company by the insured, and that within 60 days after the fire the insured shall render a statement to the insurer stating, among other things, the cash value of each item of the property and the amount of the loss thereon. A compliance with the iron-safe clause enables the insured to comply with this general provision of the standard policy in cases where stocks of merchandise are involved.

The iron-safe clause comes within the exception provided by subsection 6, § 9198, R. C. 1919, and attaching said clause to the policy and making the same a part thereof, does not add to the contract other or different terms or conditions than those intended. By such clause the insured agrees only to keep and preserve records which will enable him to furnish a proper proof of loss from which the insurer can ascertain the amount of such loss. We believe that this holding renders effective the legislative intent to require honesty and fair dealing on the part of both parties to the contract.

The wisdom of such a provision is exemplified in the present case. The insured made no attempt to comply with the provisions of the clause except that he took inventories and kept some books. These books and inventories were kept in a box in the store and were consumed by the fire which destroyed the stock of merchandise while the policy sued on was kept away from the fire and not destroyed. Respondent claimed that his loss was $2,750, but the amount thereof as ascertained by the jury was only $1,075, and the evidence tending to establish such value was very unsatisfactory and consisted largely of guesses and groundless estimates.

Our attention has been called to the following statement of this court in Lawyer v. Globe Mutual Ins. Co., supra.

"By this law, which is operative equally upon both, the parties to the contract are prohibited from inserting in the contract other or different terms or conditions than those prescribed by the law itself."

This language related to the standard policy law contained in chapter 126, Laws of 1905, which chapter was expressly repealed by chapter 164, Laws of 1909, the source of sections 9198 and 9199, R. C. 1919. The two acts differ in many material respects. The first act provided, in subdivision 6 of section 1, that facts or conditions of any particular risk of insurance, added to the standard form—

"shall in no way be inconsistent with *or a waiver of* any of the provisions or conditions of the standard policy."

The later enactment omits the italicized words. The present policy also contains the provision hereinbefore quoted that—

The policy is "made and accepted subject to * * * such other provisions, agreements or conditions as may be indorsed hereon or added hereto "

The standard policy under consideration in the Lawyer Case contained no such provision. It follows that the language used is inapplicable to the present standard policy, and would do violence to the plain provisions thereof.

[2] The clause under consideration, having been properly attached to and made a part of the policy, constituted a promissory warranty, the breach of which defeats respondent's right to recovery. We cite only a few of the authorities which support this ruling: Connecticut Fire Ins. Co. v. Jeary, 60 Neb. 338, 83 N. W. 78, 51 L. R. A. 698; Joffe v. Niagara Fire Ins. Co., supra; Hammond v. Niagara Fire Ins. Co., 92 Kan. 851, 142 P. 936, L. R. A. 1915F, 759; Springfield Fire & Marine Ins. Co. v. Griffin, 64 Okl. 131, 166 P 431; 26 C. J. 250, and numerous cases there cited.

The clause is to be given a fair and reasonable construction to the end that its apparent purpose may be accomplished; namely that the insured shall produce books and the last inventory from

which the extent of the loss may be ascertained.   As is said in a note in 39 A. L. R. 1443, where numerous cases are cited:

"The 'iron-safe' or 'book warranty' clause does not exact any specific system or form of books to be kept by the insured, nor does it require a system of bookkeeping which will conform to the most scientific standards.   The purpose of the clause is accomplished when the insured keeps his books in such a manner as to constitute a record of business transactions which a person who is of ordinary intelligence, and who is accustomed to accounts, can understand. and from which he can ascertain the amounts and value of the merchandise at the time of the loss."

Respondent also contends that appellant is now estopped from relying upon the breach of the terms of the so-called iron-safe clause.   No facts supporting this contention appear in the record, and no estoppel has been pleaded.

[3] Respondent also contends that the iron-safe clause did not become operative until 30 days after the taking effect of the policy.   This contention is devoid of merit.   Respondent, having taken an inventory within 12 months prior to the issuance of the policy, was not, under the provisions of said clause, required to take a new inventory within 30 days thereafter, but he was required to keep the inventory which had been taken a few months prior to the issuance of said policy, or to take a new one, and keep a set of books showing a record of business transacted, and to produce such books, and the last inventories taken after the loss occurred.

It follows that the motion for a directed verdict, or for judgment notwithstanding the verdict, should have been granted, and a consideration of the remaining assignments of error becomes unnecessary.   The judgment and order appealed from are reversed, and the case is remanded, with instructions that judgment be entered dismissing the action on its merits.

KNIGHT, Circuit Judge, sitting in lieu of DILLON, J.